**People of the State of Illinois, Plaintiff-Appellee, v. Theodore Wright, Defendant-Appellant.**

**Gen. No. 50,161.**

First District, First Division.

November 15, 1965.

William D. Maddux, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Sammons, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, Theodore Wright, appeals from a conviction by jury for the crime of robbery. He seeks reversal contending the court erred in admitting hearsay and prejudicial testimony; denying him a continuance; unduly restricting cross-examination, and allowing the

prosecution to make inflammatory and prejudicial argument to the jury.

A prior trial resulted in a hung jury and the matter comes here on appeal following the retrial.

On October 22, 1962, Nathaniel Jones was robbed by two men. A watch and five one-dollar bills were taken from him. On November 5, 1962, fourteen days later, Jones observed the defendant on the street, went to the nearest telephone, called the police, and continued to keep the man under surveillance. Jones hailed a roving police squad car and had the officer thereof detain the defendant until the arrival of the police officer sent out as a result of the telephone call. Defendant was placed under arrest and taken to the police station where further investigation was conducted by Detective Miller of the robbery unit. No one else was apprehended as being involved in the crime.

Jones testified that on the day of the occurrence he was in the vicinity of 50th Street and Calumet Avenue, Chicago, at approximately 4:45 p. m. While walking on 50th Street he was confronted by a man with a piece of paper in his hand who asked him for directions to the Howard Hotel. Jones told him he knew of no Howard Hotel in that vicinity and as he attempted to walk around the man, he heard a voice behind him say "this is it, a stick up." The man behind him had a pistol, and the man in front of him who had asked for the directions then brandished a knife and "shoved" it against Jones' stomach. Both men rifled his pockets, took his watch, and left after the man behind struck him on the head with the gun. Jones identified the defendant in court as the man who asked directions of him and held the knife, and said that approximately thirty seconds elapsed from the time he first saw the defendant on the street and the time the second person with the gun approached; that two or two and a half minutes transpired until his

25

watch was taken from his wrist by the defendant. During all of the time he was looking "in an easterly direction . . . face to face" with the defendant with whom he was in body contact, and who was "standing close, within hands reach. . . ."

He further testified that the man who held the knife to his stomach was a slender Negro approximately six feet tall, between 30 and 40 years of age, in need of a haircut, with a short mustache, and "wearing a gray sport jacket with black interwoven, black or charcoal colored pants with a sweater low neck V front with a dark or black band around the outer edge of this fold that was on the front of it." The man also walked with a strut as if his feet were sore or tender. When Jones saw the defendant two weeks later, he recognized his face and his walk. He said defendant also wore the same sweater.

Defendant argues that prejudicial and incompetent hearsay evidence was admitted. The record indicates that the complaining witness, Jones, was allowed to relate a conversation with the arresting officer, Cullen, as to the identification of the defendant, in his presence, as follows:

> Well, Officer Cullen asked me, "Did you call the police?" and I said, "Yes, I did," and I told him why. . . . I said, "I am the man that called the police, I was robbed." He said, "Where is the man that robbed you?" I said, "This is the man." I pointed to the defendant and he said, "Are you sure?" I said, "I am sure." He said to the man, "Come with me to the squad car." The man said to me, "Why don't you tell him like it is, man."

Then, the complaining witness was allowed to relate a conversation in defendant's presence with Officer Miller regarding identification, in substance, as follows:

> I had a conversation with the defendant at the police station. Present was Officer Cullen and Of-

ficer Miller. This was a short time after the man had been apprehended. . . . When I was confronted by the investigating officer whom I later learned to be officer Miller from Robbery, *he asked me could I identify the man that robbed me and I said yes. He asked the man about the charges and the man said no.* By the man I am referring to Theodore Wright, the man that was in custody. [Emphasis ours.]

And again, Officer Cullen was permitted to repeat the conversations between himself and the complaining witness, Jones, as to the identification of the defendant. Officer Cullen stated that when he arrived there were a number of people present on the street including Mr. Jones, the defendant, and other police officers. He further stated that "I asked Mr. Jones the circumstances of the call and he pointed to the defendant and said 'He is one of two men that held me up on a previous date.'"

Detective Miller was permitted to relate his conversation with Officer Cullen and his conversation with the complaining witness, Jones, as to the identification of the defendant made in defendant's presence. He testified as follows:

I asked Officer Cullen who placed the call for assistance for the robbery unit. Officer Cullen responded he had placed the call for assistance inasmuch as he had a robbery victim present with a possible offender and the robbery had occurred on a previous date. I also had a conversation with Mr. Nathaniel Jones at that time and the defendant was still present in the room.

I asked Mr. Jones to relate the date, the circumstances and the amount of loss and the number of people involved in his original police report. Mr. Jones stated that he had been robbed on the 22nd of October by two unknown men underneath the

27

■■■

elevated structure on 50th Street between Calumet and Prairie Avenue; that there were two men involved; that he had lost currency, an unknown amount of change and a man's Benrus wristwatch.

I then asked Mr. Jones was he able to identify the men and he said yes, he was able to identify the men and one of the men was arrested then and he pointed to the defendant, Theodore Wright. I asked Mr. Jones was he positive of the identification of the defendant, Mr. Wright, and he stated that he was, that Mr. Wright was the man that had held the knife to his stomach facing him and removed his watch from his arm.

He also stated that at this time Mr. Wright had on the same sweater that he had on the evening of the robbery.

■ In our opinion these statements made by the complaining witness and repeated by the police officers as to the identification of defendant are hearsay and inadmissible. The sole evidence involving defendant in the crime was the testimony of the complaining witness. The effect of such additional statements was to give the impression to the jury that the evidence against defendant was corroborated.

People v. Lukoszus, 242 Ill 101, 89 NE 749 (1909) involved a positive identification by one witness with "no important circumstances of corroboration." (p 105.) In holding the testimony of the arresting officer inadmissible, the court states:

In the examination of the police officer who arrested the defendant the witness was asked if anyone gave him a description of the defendant. The court overruled an objection, and the witness answered that he got the description from Mike Wajankowski. The witness was then asked if that was the man he took

the defendant to, and he answered that was the man they took the defendant to to identify him. The connection of defendant with the crime rested on the testimony of Wajankowski, and it was error to permit the police officer to testify that he got a description of defendant from Wajankowski. The testimony amounted to the same thing as permitting one witness to testify that the other witness told him the defendant was the man. The rule against hearsay was violated, and the testimony of the officer amounted to a corroboration of Wajankowski's testimony identifying the defendant as the man who struck the deceased. (pp 107, 108.)

■ The State contends that "while the facts in the Lukoszus case are significantly different from those at hand, it is difficult to reconcile the principle involved from that at issue in cases decided differently since;" yet, it does not attempt to show or indicate wherein the facts are significantly different. In Lukoszus, one Wajankowski testified that the person who assaulted and struck the deceased was the defendant, while the defendant testified that he had nothing to do with it. "There were no important circumstances of corroboration of either witness. . . . The truth of the charge against the defendant rested almost wholly upon the identification of Wajankowski and the contradiction by the defendant. . . . ( pp 105, 106.)" The court held that the evidence was such as to make it important that the rulings should be correct. The difference, if any, would be that Lukoszus took the stand and denied the charge while the defendant in the case at bar did not testify. But, it is well settled that a conviction must stand on the strength of the State's case and not upon the weakness of the defense. People v. Benson, 19 Ill2d 50, 61, 166 NE2d 80 (1960) ; People v. Boyd, 17 Ill2d 321, 328, 161 NE2d 311 (1959).

The pronouncement of Lukoszus was applied in People v. Krejewski, 332 Ill 120, 163 NE 438 (1928) when the court, on page 123, said:

> Prior to the calling of Novak as the court's witness the prosecution called two police officers and interrogated them as to statements made by Novak to them with reference to his identification of Gorz and Krejewski, and allowed them to testify that Novak had stated to them that they were the right fellows and that he identified them. This evidence was merely hearsay. It is error to permit a police officer to testify that a witness identified one accused of crime. (People v. Lukoszus, 242 Ill 101, 89 NE 749.)

The State maintains that where identification is a substantial factor in the trial, a witness may be allowed to testify to a prior identification and this fact may be corroborated by police officers *if the defendant has not denied such an identification* and where such identification is in the defendant's presence. In support thereof, they cite People v. Stella, 344 Ill 589, 176 NE 909 (1931) where the court held the testimony of one or two police officers and a witness, relative to the identification of the defendant by the victim, admissible. The victim "picked" two of the defendants and identified them. "He did it in their hearing and presence, and plaintiff in error said nothing except to take a good look and be sure." (p 592.)

The State also relies upon People v. O'Donnell, 315 Ill 568, 146 NE 490 (1925), and People v. Braverman, 340 Ill 525, 173 NE 55 (1930). In O'Donnell the police officers testified as to what took place after capturing and returning the defendants to the scene of the crime where the victim in a conversation with them at the time pointed out the defendant O'Donnell, and said "That is the man," "Here is one of them," and "This is the man that

stuck me up." (p 572.) These statements of the victim were made in the presence of the defendants and no denial of the truth of the statements was made by any of them.

■ In Braverman, on the direct examination of a witness, the assistant state's attorney inquired what, if anything, was said at the police station. She answered that the question there asked her was whether she recognized the defendant. Her answer was made in his presence, it was in the affirmative, and he remained silent. The court held the testimony admissible. If the identification is made in the defendant's presence *and he does not deny it,* it may be received as an implied admission. The following comment appears in 80 ALR 1235, 1236:

> It may be stated as a general rule that, when a statement is made in the presence and hearing of an accused, incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible on a criminal trial, as evidence of his acquiescence in its truth. A statement so made, of itself, would be objectionable as hearsay testimony, being a statement made at some time other than at a present trial, offered to prove the truth of the matter therein asserted, and based entirely on the credibility of a declarer not then before the court. However, as in the case of admissions generally, the statements herein considered are not offered as evidence of their truth merely because they were uttered; they are secondary in nature and are accepted in evidence as untainted by the hearsay stigma merely because they are a necessary predicate to the showing of the substantive evidence, the reaction of the accused thereto. The crystallization of the experience of men shows it to

31

be contrary to their nature and habits to permit statements, tending to connect them with actions for which they may suffer punishment, to be made in their presence without objection or denial by them, unless they are repressed by the fact that the statement is true.

■ An evasive answer, or one unresponsive to the declaration, can be tantamount to absolute silence, and when not amounting to a denial, renders admissible both the statement and the reply under the rule as to tacit admissions. See 80 ALR 1248.

In the case before us the evidence is clear that the defendant, at all times, denied the commission of the crime. Officer Cullen's testimony upon cross-examination disclosed the following:

Q. Theodore Wright always denied any robbery, isn't that right?

Q. He denied robbing Mr. Jones, did he not?

By the Witness: The defendant said "Why don't you tell him like it is, man."

Q. And didn't he tell you that he had never seen Mr. Jones and he never robbed Mr. Jones?

By the Witness: No, sir, *he just kept saying* "Why don't you tell him like it is, man." [Emphasis ours.]

Jones, the complaining witness testified that the defendant said "Why don't you tell him like it is, man." Jones also stated that when he was with Detective Miller of the robbery unit, and identified the defendant, Detective Miller "asked the man about the charges and the man said no."

On cross-examination of Jones, defendant's denial was further brought out as follows:

Q. And at that time he said he didn't rob you, isn't that right?

A. That is right, he said he didn't, that is right.
Q. Did he say it more than one time?
A. Yes.

In a recent case, People v. Harrison, 25 Ill2d 407, 185 NE2d 244 (1962), defendant was accused of assaulting two girls. The older one identified him at the trial of the case. At no time was the younger girl asked to nor did she identify the defendant as the man who assaulted her, or as the man whose photograph she picked out, or as the man she identified at the lineup. A police officer was allowed to testify that he was present when the girls identified the defendant's photograph and pointed out the defendant in the lineup. The court said (p 414): "This testimony was not offered for the purpose of proving an implied admission. The officer was asked no questions about the defendant's reaction when the girls pointed to him in the line-up and said, 'That is him' and so no admission could be implied. . . . The testimony of the officer, therefore, could only have been offered to bolster the testimony of the older girl and to close the gap that resulted from the failure or refusal of the younger girl to identify the defendant at the trial. For that purpose, however, it was clearly hearsay and was inadmissible. (People v. Lukoszus, 242 Ill 101, 108; People v. Krejewski, 332 Ill 120, 123; People v. Reeves, 360 Ill 55, 64 (1935))."

▮ The State primarily relies upon People v. Sterling, 341 Ill 112, 173 NE 139 (1930). It was there held that testimony that during the identification of the defendant at the police station the person whose home had been robbed said to a police officer, when the defendant was brought in with others, that her husband was there and knew the defendant as well as she did, although improper as hearsay, could not be regarded as prejudicial. The court said that the remark was immaterial because it was shown that the husband did know the defendant as

33

well as the wife did and her statement did not prejudice the defendant. The case holds that incompetent evidence may be harmless if all that it tends to prove is otherwise proven without contradiction by competent evidence. But, if as in Harrison, the hearsay evidence is offered to bolster otherwise uncorroborated testimony, it is prejudicial and reversible error.

■■ The State calls our attention to the fact that defendant's counsel failed to object to some of the otherwise inadmissible hearsay testimony and urges that it not be considered as constituting reversible error. But where the admission of evidence is so erroneous and prejudicial as to prevent defendant from receiving a fair trial, then upon review this court may consider such assignment of error even though no objection was made. People v. Morgan, 20 Ill2d 437, 441, 170 NE2d 529 (1960) ; People v. Moore, 9 Ill2d 224, 232, 137 NE2d 246 (1956). Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Ill Rev Stats 1963 (Code of Criminal Procedure), chap 38, § 121–9 (a).

■■ In the case at bar the defendant's connection with the crime rests upon the identification of a single witness. The testimony of the police officers with regard to the identification of defendant by Jones was incompetent as hearsay. The error in admitting the testimony was further amplified by the prosecutor referring to it in his argument to the jury. See People v. Reeves, 360 Ill 55, 64, 195 NE 443. The probative value of the officers' testimony is not enhanced by the fact that it was received without objection. People v. Harrison, 25 Ill2d 407, 414, 185 NE2d 244. Nor can the error in admitting the testimony be regarded as harmless in view of the fact that defendant was identified by but one witness. Such testimony might have bolstered the identification and might have given the effect of corroboration. Although the testimony of a single witness may sustain a

conviction, the record in such case must be free from prejudicial error.

Since we hold the admission of the hearsay testimony was sufficiently prejudicial so as to require a new trial, other errors raised are not of a nature that can be expected to recur upon a new trial and need not be considered.

For the reasons given above, the judgment of the trial court is, therefore, reversed and the cause remanded for a new trial.

Reversed and remanded.

BURMAN, P. J. and MURPHY, J., concur.