THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NATHSON FIELDS, Defendant-Appellant.

(No. 58964;

First District (3rd Division)—August 7, 1975.

Paul Bradley and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Linda West Conley, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Nathson Fields, was tried by a jury and found guilty of the murder of Larry Watkins, the aggravated battery of Charles Merriweather, and the attempted murder and aggravated battery of George Woods. The trial court sentenced defendant to serve concurrent terms in the penitentiary of 35 to 50 years for murder, 10 to 20 years for attempted murder, and 1 to 10 years for aggravated battery. Defendant appeals, raising the following contentions:

(1) The trial court erred in refusing to suppress defendant's written statement as the "fruit" of a warrantless arrest made without probable cause;

(2) The trial court erred in refusing to suppress defendant's involuntary written statement;

(3) The trial court erred in permitting the prosecution to read to the jury a defense witness' prior inconsistent written statement which inculpated the defendant in the offenses charged;

(4) The trial court erred in permitting defendant's alibi witnesses to be impeached upon an improper basis;

(5) The defendant was not proved guilty of the offenses beyond a reasonable doubt;

(6) The defendant was improperly convicted and sentenced for both the attempted murder and aggravated battery of George Woods;

(7) The sentence imposed for murder was excessive for a 17-year-old with defendant's background;

(8) The defendant was denied equal protection of law by being tried

as an adult while females of the same age are under the jurisdiction of the juvenile court.

A narrative of the pertinent facts follows.

The offenses with which defendant was charged occurred at approximately 11:30 p.m. on October 1, 1971, in the general vicinity of 144th and 147th Streets and Leavitt Avenue in Dixmoor, Illinois. Charles Merriweather, Larry Watkins, and Doris Laye had left a party at 145th Street and Leavitt Avenue and were riding in a car owned by Merriweather's brother. When they halted at a stop sign at 145th Street, two young black male pedestrians yelled "stone lover" at them and began firing pistol shots at their car, then fled. Merriweather and Watkins left the car and gave chase on foot. Merriweather caught one of the assailants about a half block away, and as he and Watkins fought with them Watkins was fatally shot. Merriweather was then struck over the head with a pistol and left the scene. Soon after the attack, investigating officer William Hooks of the Dixmoor Police Department discovered that another youth named George Woods had been shot near 147th Street and Cooper Avenue. Larry Watkins died before he could be questioned by police. Doris Laye did give the police a general description of the two assailants as to height and clothing.

On October 5, 1971, defendant was arrested in Robbins, Illinois, by Dixmoor Police Officers William Hooks and Robert Vinson and taken to the Dixmoor Police Station. Another youth named Robert Martin was arrested that day in connection with the offenses and was also taken to the Dixmoor Police Station. The next day defendant and Martin each gave written statements to assistant State's Attorney Anthony Montemurro in his office in Chicago.

In defendant's statement he admitted that he was armed with a pistol and was present at the scenes of the attacks, but accused Martin of firing all the shots. Defendant further stated that he later gave Martin his pistol and that Martin had hidden their weapons at a location unknown to him. The statement of Robert Martin also admitted that he was armed with a pistol and was at the scenes of the attacks; that he had shot Larry Watkins once in the shoulder during the fight; and that he had later hidden his pistol and the defendant's in his backyard. However, Martin's statement accused defendant of shooting Larry Watkins in the head and shooting George Woods at another location when he mistook Woods for one of the occupants of the Merriweather car. On the basis of Martin's written statement a search warrant was issued and executed, resulting in the recovery of two pistols which had been hidden behind his home. Defendant and Martin were then jointly indicted for the alleged offenses, but severed for trial.

Prior to trial, defendant moved in two separate motions to suppress his written statement. He contended respectively that the statement was inadmissible: first, that there was no probable cause for his warrantless arrest, thus rendering the statement to be the fruit of a poisonous tree; second, that the Dixmoor police had coerced him into making the statement through physical abuse and threats against his family.

At a pretrial hearing on defendant's motions Officer William Hooks testified that he assisted in arresting defendant on October 5, 1971; and that at the time of arrest defendant was neither committing a crime, nor was he arrested under a warrant. Defendant testified that after his arrest he was taken to the Dixmoor Police Station and placed in a room alone with Officer Robert Vinson. He stated that after denying any knowledge of the offenses he was kicked in the groin and punched in the ribs by Vinson who told him he would either say Robert Martin did the killing or he himself would be dead. Defendant stated that he was then placed in an empty cell; that later, Police Chief Clifford Wood and Officers Vinson and Lytherio O'Connor came in, and that after he again protested ignorance of the offenses he was beaten by Vinson and O'Connor. When he finally agreed to cooperate, Vinson took out his service revolver, pointed it at defendant's head and told him that if he did not cooperate they would make sure something happened to his family. He gave a written statement to assistant State's Attorney Montemurro the next day after being informed by him of his constitutional rights.

Irene Fields, defendant's mother, testified that she saw her son after he had made the written statement, and he told her the police had beaten him and forced him into making the statement. She further stated that she read the statement and signed it, but only to indicate she had read it.

In opposition to defendant's motions, Officer Robert Vinson testified that in addition to the descriptions received from Doris Laye, he also received information from an undisclosed source concerning the attack the day after it occurred. The source had told Vinson that he had attended the same party as the defendant and Robert Martin; that he had previously known both of them; and that after leaving the party he walked about 10 feet behind them on the street near 145th and Leavitt Avenue and saw Martin shoot at a green Challenger or Charger automobile; and that Martin and the defendant turned and fled. Vinson testified that the source later identified photographs of Martin and the defendant, although the photographs were not inventoried by him or shown to Doris Laye. On cross-examination Vinson stated that he had talked to this source more than two times on prior occasions concerning criminal activity in which the source was not himself involved, and that one arrest for unlawful use of a weapon had resulted from the information. Vinson

further stated that a charge was brought upon that arrest, but he thought the charge resulted in supervision rather than a conviction. Vinson testified that it took him about half an hour to persuade the source to talk to him about the attack upon the Merriweather automobile, and that he did not threaten the source or promise him police protection or any reward, but only assured him anonymity. Vinson admitted that the corner where the attack occurred is not well lighted.

Officer Vinson, Officer O'Connor, and Police Chief Wood testified that defendant was not mistreated in any manner prior to giving his statement. Vinson additionally testified that he informed defendant of his constitutional rights. Assistant State's Attorney Montemurro testified that defendant showed no signs of mistreatment at the time he made his written statement, and that he made no complaint of mistreatment by police until the time of the hearing at the inquest held on November 9, 1971, as to Larry Watkins' death. Montemurro testified that defendant's mother made no complaint concerning the treatment of her son by the police when she signed the defendant's written statement. The trial court denied each of the motions to suppress the statement.

At trial, Charles Merriweather testified as to the attack upon his brother's automobile but could not identify defendant as a participant. George Woods testified that he was walking on the street when without warning he was shot in the neck by a young black man wearing what he described as "loud clothing." He could not identify defendant as his assailant. Doris Laye did not testify. Officer Vinson testified concerning the events leading up to the arrest of defendant and Robert Martin. Assistant State's Attorney Montemurro testified as to the events surrounding the taking of defendant's written statement and the statement was then read into evidence. A stipulation was entered that if called to testify a certain firearms expert of the Chicago Police Department would testify that the bullets recovered from the body of Larry Watkins could not be positively identified as being fired from any particular weapon due to their deteriorated condition; and also that the pistols recovered from the rear of Robert Martin's home did not contain any fingerprints. The prosecution thereupon rested its case in chief.

Defendant presented an alibi defense. His mother, Irene Fields, testified that he lived with her, and that she saw him with Robert Martin at her home at 1 a.m. on October 2, 1971. She further testified that defendant had told her the police had beaten him and forced him to make his written statement. Charles Jennings, Donald Jennings, and Robert Thompson testified that defendant was with them at Jennings' home in Harvey, Illinois, on October 1, 1971, from 9 p.m. until 11:55 p.m., when he left in a taxi. On cross-examination, over objection, the prosecutor

elicited testimony from Charles Jennings and Robert Thompson that prior to testifying, each had spent the previous night in the Cook County jail and had been incarcerated with defendant in the police "bullpen" behind the courtroom just before testifying.

Robert Martin was then called as a defense witness. On direct examination he testified that he had been with another youth who was known to him only as "Blood," at the party which the occupants of the Merriweather car also attended. After they had left the party and were on the street, Blood gave Martin a pistol and forced him to join in shooting at the Merriweather car. Martin testified that it was Blood who killed Larry Watkins, and not the defendant. Martin stated that he did not see defendant at all on October 1, 1971. On cross-examination and without objection by defendant, Martin was questioned in almost line-by-line detail about his prior written statement inculpating defendant in the shootings. On redirect examination Martin stated that he had lied in his statement about defendant's involvement because the police had beaten him and held his head under water until he agreed to incriminate defendant.

Defendant testified in his own behalf that he did not participate in any of the attacks of October 1, 1971; that he had spent the evening at Charles Jennings' home; and that his written statement was the product of police abuse and threats to his family, all of which he described to the jury.

In rebuttal, Officers Vinson and O'Connor testified that defendant had not been subjected to any police abuse prior to giving his written statement. Assistant State's Attorney Montemurro testified that neither defendant, nor his mother had complained of police coercion prior to or at the time he gave his written statement, and that he received no complaints of police coercion from Martin or Martin's mother prior to Martin's written statement. Then, over defendant's objection, Montemurro was questioned in almost line-by-line detail concerning Martin's written statement incriminating the defendant.

After closing arguments the trial court instructed the jury and included the following pattern instruction: "Evidence that on some former occasion a witness made a statement inconsistent with his testimony in this case, may be considered by you in deciding the weight to be given to the testimony of that witness." Illinois Pattern Instruction—Criminal No. 3.11.

The jury returned verdicts of guilty on the charges of the murder of Larry Watkins, the aggravated battery of Charles Merriweather, and the attempted murder and the aggravated battery of George Woods. A verdict of not guilty was returned on the charge of attempted murder of Charles Merriweather. In aggravation and mitigation it was determined that defendant had been convicted of aggravated assault on June 28,

1971, and that within a week prior to being sentenced in the instant case, defendant had engaged in a fistfight with a corrections officer at Cook County jail. The prosecution suggested to the trial court that defendant not be sentenced on the aggravated battery charge as to George Woods. Thereafter, without specifying upon which of the verdicts of aggravated battery defendant was being sentenced, the trial court imposed concurrent penitentiary terms of 35 to 50 years for murder, 10 to 20 years for attempted murder, and 1 to 10 years for aggravated battery.

■■ Initially, defendant contends that the trial court erred in refusing to suppress his written statement as the inadmissible "fruit" of a warrantless arrest made without probable cause. Defendant filed two separate and distinct motions to suppress. The first which we consider is expressly predicated upon the fourth amendment of the United States Constitution, and the burden of proving that the statement was not given incident to a lawful arrest is on the defendant. (Ill. Rev. Stat. 1971, ch. 38, par. 114—12.) The dual issue which arose from this motion to suppress was the legality of defendant's arrest and the relationship of that arrest to his later written statement. (But *cf. People v. Harris* (1969), 105 Ill. App.2d 305, 245 N.E.2d 80.) The voluntary character of defendant's statement was not there placed in issue, nor should it properly enter into a consideration of that motion. See *Morales v. New York* (1969), 396 U.S. 102; *Traub v. Connecticut* (1963), 374 U.S. 493 (mem.); *State v. Traub* (1963), 151 Conn. 246, 196 A.2d 755.

It is argued by defendant that he was arrested without probable cause in that the police acted without an arrest warrant; that he was not observed to be in the commission of any offense at the time of the arrest, and that the only information the police had that connected him to the offenses was the uncorroborated tip of an undisclosed informer of undemonstrated reliability. Defendant further argues that his written statement, given on the day following his arrest and after continuous police custody, was incident to and a direct result of that illegal arrest. We need not reach the issue as to whether defendant was arrested with probable cause. Even assuming that his arrest was illegal, the instant record reflects sufficient attenuation between the arrest and the defendant's written statement to remove any taint which would permit the statement to be received into evidence against defendant.

■■ Since the ruling in *Wong Sun v. United States* (1963), 371 U.S. 471, it is clear that verbal evidence which derives directly from official illegality is no less the "fruit" of such illegality than the more common evidence of a tangible nature. Yet the illegality of an arrest which forms the basis of the claimed official misconduct will not per se render inadmissible a statement made by an accused subsequent to his arrest. As was aptly

stated by this court in *People v. Riszowski* (1974), 22 Ill.App.3d 741, 318 N.E.2d 10, 746-47:

> "Moreover, the United States Supreme Court has directed that we need not characterize all evidence to be fruit of the poisonous tree '* * * simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." '

(*Wong Sun v. United States* (1963), 371 U.S. 471, 488.) The court has further held that purgation of the taint can be established by a showing that the challenged evidence had been obtained from an independent source (see *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385) or that the connection between the lawless conduct of the police and the discovery of the challenged evidence had become so attenuated as to dissipate the primary illegality. See *Nardone v. United States* (1939), 308 U.S. 338.

While illegal police conduct is but one circumstance to be considered regarding any question as to the voluntariness of a later confession (see *People v. La Frana* (1954), 4 Ill.2d 261, 122 N.E.2d 583), resolution of that issue will not in and of itself settle the question of purgation of the original primary illegality. As Justice Tuttle pointed out in *Collins v. Beto* (5th Cir. 1965), 348 F.2d 823, 829:

> '* * * if a mere showing that a confession during a period of unlawful detention was "voluntary" were sufficient to establish its admissibility, *Wong Sun* would be an empty promise, for the inadmissibility of "involuntary" confessions has long been fully recognized.'

(Also see *People v. Johnson* (1969), 70 Cal.2d 541, 450 P.2d 865, 75 Cal. Rptr. 401, *cert. denied* (1969), 395 U.S. 969.) Once an arrest is shown to be illegal, a confession following the arrest shall be presumed to be the product of that illegality, with the State bearing the burden of establishing a purgation of the illegality on the basis of the *Wong Sun* doctrine. *People v. Landgham* (1970), 122 Ill.App.2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911; *Collins v. Beto, supra* (Tuttle, J.); *Bynum v. State* (Okla. Crim.App. 1971), 490 P.2d 531."

In the recent case of *Brown v. Illinois* (1975), 422 U.S. 590, 45 L.Ed.2d 416, 95 S.Ct. 2254, the United States Supreme Court addressed the ques-

tion of attenuation and what factors should be considered in determining whether a confession or statement of an accused has been purged of the primary taint of an illegal arrest. There, the defendant's conviction for murder found evidentiary support in part from two statements which he had made after his arrest and after he had been advised of his constitutional rights. On appeal, the Illinois Supreme Court found the defendant's arrest to have been without probable cause, but affirmed the admissibility of his two statements on the ground that the constitutional warnings given to the defendant had served per se to break the causal connection between the illegal arrest and his subsequent statements. (*People v. Brown* (1974), 56 Ill.2d 312, 307 N.E.2d 356.) Although stating that constitutional warnings are an important factor in determining whether a confession or statement has been obtained by exploitation of an illegal arrest, the United States Supreme Court reversed the defendant's conviction and held that constitutional warnings are not the only attenuation factor to be considered, nor could such be deemed to establish per se attenuation. (Accord, *People v. Riszowski.*) Of further significance, it was stated, were the temporal proximity between the illegal arrest and the confession or statement, the presence of any intervening factors between the two, and the purpose and flagrancy of the official misconduct producing the illegal arrest. On the basis of the record, the court concluded that the State had failed to establish sufficient attenuation to permit the introduction into evidence of either of the defendant's statements. In *Brown* the defendant's first statement was given at the police station less than two hours after his arrest, and no intervening factors of any significance were present between the arrest and that statement. Moreover, the court determined that the illegality of defendant's arrest had a quality of purposefulness; that the arresting officers virtually conceded the impropriety of the arrest; and that the arrest was merely investigatory in design and executed in a manner having the appearance of being calculated to create surprise, fright and confusion.

■■ In the instant case, both Officer Vinson and assistant State's Attorney Montemurro testified that they had each advised defendant of his constitutional rights, and defendant additionally admitted that Montemurro had so advised him prior to his written statement being given. That statement itself was not made at the time and place of defendant's arrest, but came 1 day later at Montemurro's office in Chicago. Here, defendant not only gave his statement away from the scene of his arrest and after he admittedly had been advised of his rights, but the temporal proximity between that arrest and the later statement was far greater than that involved in *Brown*. While there is no evidence of any intervening factors separating defendant's arrest and subsequent statement, there is also no

evidence to indicate that defendant was arrested as a pretext for some collateral objective of the police. Nor does the evidence reflect that the arresting officers were acting upon such absence of indicia of probable cause as to render entirely unreasonable any belief on their part that probable cause existed. The illegality of defendant's arrest arose, if at all, from the unwarranted reliance by the police upon the information secured from the undisclosed source as testified by Officer Vinson. On this record there existed neither a patently improper purpose in defendant's arrest, nor a flagrant disregard of the dictates of the Fourth Amendment. We conclude that the evidence adduced at the hearing on defendant's first motion to suppress established that his allegedly illegal arrest and his subsequent written statement were attenuated to a sufficient degree to render the statement admissible at trial. The trial court did not err in denying the foregoing motion to suppress.

■■ Defendant contends that the trial court erred in denying his second motion to suppress his written statement as involuntarily given. Unlike his first motion to suppress, this motion is predicated upon the fifth amendment of the United States Constitution and as such, the burden of proving that his statement was voluntary rested upon the State. (Ill. Rev. Stat. 1971, ch. 38, par. 114—11.) If it can be demonstrated by a preponderance of the evidence that an accused's confession or statement was voluntarily made, the burden of proof is satisfied, and the trial court's determination thereof is not subject to reversal unless it is contrary to the manifest weight of the evidence. *People v. Strayhorn* (1965), 35 Ill.2d 41, 219 N.E.2d 517.

In the instant motion to suppress, defendant asserted that his written statement was involuntary because it was given in violation of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, and because it was the product of physical and mental coercion by the police. However, in his brief defendant limits his argument to the latter assertion, and we shall accordingly limit our consideration solely to that question. At the hearing on the motion before trial, defendant testified that he was beaten at the Dixmoor police station on two separate occasions on the day of his arrest. He further testified that he was threatened with death and that threats were made against his family. His mother testified that defendant told her he was beaten by police to induce him to make a statement. Officers Vinson, O'Connor and Police Chief Woods testified that defendant was not mistreated in any manner while in their custody. Assistant State's Attorney Montemurro testified that defendant and his mother made no complaints concerning the conduct of the police before defendant gave his written statement, and that the first complaint made by defendant was at the coroner's inquest held more than one month after his arrest.

Montemurro further testified that defendant exhibited no signs of physical mistreatment at the time he made his written statement.

Given the direct conflict in the evidence, the question could only be resolved by determining the credibility of the witnesss and the weight to be afforded their respective testimony. The determination was in the first instance for the trial court, and its decision cannot be set aside absent a showing that it was clearly erroneous. (*People v. Colbert* (1973), 10 Ill.App.3d 758, 295 N.E.2d 225.) Here, the trial court obviously credited the testimony of the prosecution witnesses. Upon this record, we cannot say that such a determination was clearly erroneous, or that the overall finding that defendant's statement was voluntarily made was contrary to the manifest weight of the evidence. The trial court did not err in denying defendant's second motion to suppress.

Defendant next contends that the trial court erred in permitting the prosecutor to read to the jury a defense witness' prior inconsistent statement, the contents of which incriminated defendant in the offenses charged. It is argued that the undue emphasis given to Robert Martin's written statement by the prosecutor reflected a desire that the jury should consider it substantively and not merely for impeachment purposes alone. Defendant also argues that the resulting prejudice was compounded by the failure of the trial court to specifically instruct the jury concerning the limited use to which they could put the statement.

When called as a defense witness Robert Martin testified on direct examination that defendant was not involved in any of the offenses. He was cross-examined almost in a line-by-line detail concerning the contents of his prior written statement in which he not only identified defendant as a participant in the offenses, but stated that it was defendant who had killed Larry Watkins and shot George Woods. No objection was made to the cross-examination of Martin. On redirect examination, he testified that his written statement was untrue and the product of physical coercion by the Dixmoor police. In rebuttal, evidence was presented by the prosecution as to the voluntary character of Martin's statement. Over defendant's objection assistant State's Attorney Montemurro was then questioned in detail about the contents of Martin's written statement. Neither before, nor during cross-examination of Martin and the rebuttal testimony of Montemurro did the trial court caution the jury as to the limited purpose for which Martin's statement was being presented. Upon instructions at the close of the case, the jury was generally instructed that evidence of a prior inconsistent statement could be considered by them in determining the weight to be given a witness' testimony at trial.

■■■ The out-of-court accusations of a witness against a defendant are

hearsay and substantively inadmissible unless made in the presence of defendant and assented to by him. (*People v. Tunstall* (1959), 17 Ill.2d 160, 161 N.E.2d 300; *People v. Hundley* (1954), 4 Ill.2d 244, 122 N.E.2d 568.) In the instant case, Martin gave his written statement completely independent of defendant who was neither present at the time, nor assented to its contents. Substantive use of Martin's statement at defendant's trial was therefore inadmissible. The question which arises, however, is to what extent that statement could properly be used for the nonsubstantive purpose of impeaching Martin's direct testimony. The issue has been discussed in several cases, but the decisions do not appear to be entirely consistent. (See dissenting opinion of Chief Justice Underwood in *People v. Bailey* (1975), 60 Ill.2d 37, 322 N.E.2d 804.) Although impeachment by extrajudicial statements in a criminal case can be highly incriminating to a defendant, the weight of authority recognizes that the procedure is a proper and permissible technique if the risk that the statement might be considered substantively by the jury is adequately minimized. (*People v. Tate* (1964), 30 Ill.2d 400, 197 N.E.2d 26; *People v. Paradise* (1964), 30 Ill.2d 381, 196 N.E.2d 689.) To that end, the trial court must take care to insure that the statement is not being offered substantively under the guise of impeachment; that the statement is not presented to the jury in detail, in question and answer form; and that the jury is specifically instructed that the statement is not admitted as substantive evidence, but only for the purpose of impeaching the credibility of the witness. *People v. Kelly* (1974), 22 Ill.App.3d 908, 317 N.E.2d 282; *People v. Bacon* (1971), 22 Ill.App.3d 324, 276 N.E.2d 782.

■■ On the basis of the record in the instant case we conclude that the manner in which Robert Martin's prior written statement was presented to the jury constituted reversible error and requires that defendant be afforded a new trial. The detail into which the prosecutor delved concerning the contents of Martin's written statement during the cross-examination of Martin and the rebuttal questioning of assistant State's Attorney Montemurro was prejudicial in itself, but further, gives rise to a suspicion that impeachment was not the prosecutor's only motive and purpose. (*People v. Tunstall; People v. Kimbrough* (1970), 131 Ill.App. 2d 36, 266 N.E.2d 431.) Moreover, the general instruction to the jury at the close of the case as to the use to be made of impeaching evidence was insufficient, in our view, to have effectively controlled this prejudice in defendant's case. (*People v. Bailey; People v. Montgomery* (1972), 51 Ill.2d 198, 282 N.E.2d 138; *People v. Kimbrough.*) Even assuming that Martin's statement was offered for a legitimate purpose and in a properly restricted scope, the jury should have been specifically in-

structed .that. the statement was not substantive evidence of defendant's guilt, but only reflected upon Martin's credibility.

In. its brief the State asserts that defendant waived all error by failing to object to the cross-examination of Martin and failing to request a limiting instruction from the trial court. The State also asserts that in light of the strong evidence of defendant's guilt any error in the presentation of Martin's written statement was harmless. We disagree. First, the prejudice incurred in the cross-examination of Martin rose to the level of plain error. (Ill. Rev. Stat. 1971, ch. 110A, par. 615(a); *People v. Brown* (1972), 7 Ill.App.2d 748, 289 N.E.2d 452.) Second, defendant did object to the rebuttal testimony of Montemurro, and that testimony cannot be considered merely cumulative because through repetition it heightened the prejudice resulting from the cross-examination of Martin. Third, whether or not defendant ever requested such an instruction at the time, the trial court was obligated to specifically instruct the jury concerning the proper use of Martin's statement. (*People v. Tate; People v. Bacon.*) Finally, in view of the above and the strength of the substantive evidence adduced at trial, the State's position that any error here involved was harmless is untenable. Having thus decided, the cause must be remanded for a new trial. We therefore proceed to consider only those remaining contentions which might recur upon a new trial.

Defendant contends that the trial court erred in permitting certain of his alibi witnesses to be impeached upon an improper basis. At trial Charles Jennings and Robert Thompson had testified on direct examination that defendant was with them at Jennings' home in Harvey, Illinois, until 11:55 p.m. on the evening in question. Over objection, on cross-examination, the prosecutor elicited testimony for each witness that he had spent the previous night in the Cook County jail and had been incarcerated with defendant. Defendant argues that the cross-examination of Jennings and Thompson violated the rule that a witness cannot be impeached by evidence of prior acts of misconduct unless they are shown to be convictions for infamous crimes. In its brief the State virtually admits the error of the attempted impeachment, but argues that in view. of the "overwhelming" evidence against defendant, any error was harmless.

■■ The method of impeachment used against the two witnesses was improper. While a witness other than the defendant in a criminal case may be cross-examined concerning his conviction for an infamous crime, it is prejudicial to suggest by way of cross-examination that a witness is or has been confined in police custody merely for the purpose of throwing suspicion upon his credibility. (*People v. Halkens* (1944), 386 Ill.

167, 53 N.E.2d 923.) Here, the witnesses were not shown to have been convicted of infamous crimes and the jury was left to speculate on the reason for their incarceration. We do not accept the argument that this error was harmless. The testimony of Jennings and Thompson was critical to establishing an alibi for defendant, and their credibility was therefore of great importance to his defense. (*People v. Birdette* (1961), 22 Ill.2d 577, 177 N.E.2d 170.) The prosecutor had no right to make such inquiry, and the error should not be permitted to recur at a new trial.

■■ Defendant contends that he was not proved guilty of the offenses beyond a reasonable doubt. His argument is that the only evidence connecting him to the offenses was his uncorroborated written statement which he repudiated at trial, and that it was legally insufficient to convict him. Defendant's premise is incorrect. It is true that a conviction cannot be based solely upon a defendant's uncorroborated confession. (*People v. Norcutt* (1970), 44 Ill.2d 256, 255 N.E.2d 442.) Yet the determination of an accused as the individual criminally responsible for a particular crime is the ultimate issue in a criminal prosecution. So long as the corpus delicti is established, which does not include the identification of an accused as the perpetrator of the offense, the same together with a confession or statement tending to prove that the accused committed the offense will justify a conviction. (*People v. Taylor* (1974), 58 Ill.2d 69, 317 N.E.2d 97; *People v. Dagge* (1973), 10 Ill.App.3d 726, 295 N.E.2d 336.) In the instant case the testimony of Charles Merriweather and George Woods established the corpus delicti of each of the offenses charged against the defendant; that is, proof of a result and that the result was brought about by the criminal agency of some person. The aggregate of such testimony and defendant's written statement admitting his presence and participation with Robert Martin in the events of October 1, 1971, were sufficient to justify his conviction.

Defendant's sixth and seventh contentions relate to his sentencing on the offenses of which he was found guilty. Since we are reversing the judgments and remanding the cause for a new trial, it is unnecessary to reach these contentions.

■■ The eighth contention raised by defendant is that he was denied equal protection of law by being tried as an adult while females of the same age are under the jurisdiction of the juvenile court. The constitutionality of the applicable statute (Ill. Rev. Stat. 1971, ch. 37, par. 702—7) was upheld in *People v. McCalvin* (1973), 55 Ill.2d 161, 302 N.E.2d 342. Defendant concedes that this court is bound by that decision under the doctrine of stare decisis and states that the issue is raised to preserve the possibility of Federal habeas corpus relief. We hold that no constitutional infirmity arose from the defendant's being tried as an

adult under section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—7).

For the reasons stated, the judgments of conviction are reversed and the cause remanded for a new trial not inconsistent with the views expressed in this opinion.

Reversed and remanded.

DEMPSEY and McNAMARA, JJ., concur.