THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEOTIS BEASLEY, Defendant-Appellant.

First District (4th Division)   No. 80—1257

Opinion filed July 29, 1982.—Rehearing denied August 25, 1982.

Frederick F. Cohn, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael L. Shabat, Casimir J. Bartnik, and Raymond F. Brogan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Leotis Beasley, was charged by indictment with rape and robbery (Ill. Rev. Stat. 1977, ch. 38, pars. 11—1, 18—1). Following a jury trial in the circuit court of Cook County, defendant was found guilty of rape and not guilty of robbery. He was sentenced to six years in the Illinois State Penitentiary.

On appeal, defendant contends that (1) the State deprived him of

a fair trial by failing to request an instruction informing the jury that a prior inconsistent statement used at trial for impeachment purposes could not be considered as substantive evidence; and that (2) the trial judge should have recused himself.

We affirm defendant's conviction.

FACTS

Evidence presented at trial disclosed that on January 11, 1979, at about 1 a.m., the 18-year-old victim, a ward of the State, was walking home from the CTA elevated train stop at Addison and Lincoln following a visit that evening with her caseworker. As she walked, a male pedestrian on the opposite side of the street followed her for a few blocks, then suddenly crossed the street, stopped and questioned her, threatened her with a gun, and robbed her.

While the victim was attempting to empty her pockets, two other men approached, one from a nearby alley and the other down the middle of the street. Two of the men then took her by the arms, forced her through a gangway between two buildings, pushed her to the ground in an open courtyard area, and threatened to kill her if she screamed. The victim testified that as one of the two men held her down, the other pulled down her pants and raped her. After a few minutes the two men changed places. As the second man finished, he cut the side of her throat with a knife. The victim screamed, and the two men ran.

The victim then attempted to get help by running from door to door along the back of the apartment building, trying to awaken someone. Thomas Garcia, the occupant of the first floor apartment, heard her screams and let her in. He immediately called the police, and the victim called her caseworker. The police arrived within minutes, took a description of the two alleged rapists from the victim, and broadcast it to all patrol cars in the area. Using the description the victim provided, the police apprehended a black man on the Addison elevated train platform and brought him to the sidewalk in front of the Garcia apartment for a showup. The victim, looking through the window, positively identified him as one of the two men who had raped her.

Two policemen then took the victim and her caseworker to the emergency room of Ravenswood Hospital, where she was examined and treated for a knife wound to the neck, abdominal abrasions, and possible sexual assault. Examination of specimens taken by the attending physician revealed the presence of nonmotile sperm, and the attending physician recovered one foreign hair from the surface of

her abdomen. The victim was released about one hour later, where-upon the two policemen drove her to the area police station in order to file a complaint and view a lineup.

At the first six-man lineup, held on January 11, 1979, within four hours of the assault, the victim positively identified Stanley Williams, originally a co-defendant in this case, and Johnny Hunt as two of the three men involved in the rape and robbery. On the following day, January 12, 1979, the victim viewed a second six-man lineup and picked out defendant Beasley as the other man who had raped her. Acting on information gained after the arrest of Williams, the police had obtained an arrest warrant and had arrested Beasley at his apart-ment early on the morning of January 12, 1979.

Williams and Beasley were subsequently charged by indictment with the rape and robbery of the victim (Ill. Rev. Stat. 1977, ch. 38, pars. 11—1, 18—1). Following several pretrial hearings at which sev-eral witnesses were extensively questioned and cross-examined, the trial judge denied defendants' motions to quash the arrest, to sup-press evidence, to suppress identification, and to grant them both free transcripts.

Approximately one month after the denial of the last pretrial mo-tion, Williams's attorney learned that the trial judge's close relative was the complaining witness in an unrelated case in which a black man was accused of raping a young white woman. Claiming that the judge was prejudiced and biased, alleged proof of which was his denial of all defendants' pretrial motions, attorneys for both defendants filed a motion to dismiss the charges or, in the alternative, to vacate all the previous rulings and to substitute judges. After a hearing, the trial judge also denied this motion. At this point, defendant Williams with-drew his not-guilty plea, entered a plea of guilty, and was sentenced to concurrent terms of 13 years for rape and 7 years for robbery.

At defendant Beasley's trial, the State's case-in-chief began with testimony from personnel at Ravenswood Hospital establishing the laboratory procedures by which sperm was discovered in a sample of vaginal fluid taken from the victim and a hair found on her abdomen was determined to be of the same type as Williams's pubic hair. Police officers then testified about the procedures used to photograph the physical evidence, the transfer of evidentiary material to the police crime lab, and the specific steps taken in both the arrest of defendant Beasley and the conduct of his lineup. The victim related the story of the robbery, the rape, her attempts to get help, the showup outside the Garcia apartment, and the two lineups. Although cross-examined at length about the placement of the porch lights in the courtyard

area, she maintained that during the 20 minutes of the double rape, sufficient bright light came from one or more porch lights to enable her to have a clear, continuous look at both men.

The defendant's case-in-chief consisted of testimony by Beasley, his fiancee Cynthia Patrick, with whom he was living, and his friend, Troy Burks. In their testimony, Beasley, Patrick, and Burks all said that Beasley had spent the evening of January 11, 1979, at Patrick's apartment eating dinner, playing chess, and discussing the Bible for a report he was writing for a class at Kennedy-King College. Patrick testified that Beasley's cousin, Johnny Hunt, was temporarily living with them. She also stated that Beasley and Williams, formerly close associates, were no longer friends.

To counter Beasley's alibi evidence, the State called Williams as a rebuttal witness. When asked the identity of the two companions who had participated in the rape and robbery with him, Williams named Johnny Hunt and one Michael Smith. Thereupon, the State requested and was granted leave to question Williams as a hostile witness pursuant to Supreme Court Rule 238 (73 Ill. 2d R. 238). The State then produced a transcript of the testimony Williams had given during his guilty plea hearing and proceeded to ask him if he remembered each of five specific questions and answers in which he had named Johnny Hunt and Leotis Beasley as his companions in the rape and robbery of the victim. Williams repeatedly answered that he did not remember the testimony he had given at his plea hearing. Following the State's attempted impeachment of Williams, the defense rested.

On the following day, both sides presented closing arguments. The jury was then read the instructions previously agreed upon at the instruction conference, and they retired to deliberate. On the following afternoon, they returned a verdict finding Beasley not guilty of robbery and guilty of rape. Beasley was then sentenced to the Illinois State Penitentiary for a term of six years.

OPINION

Defendant's first contention is that the prosecution committed reversible error by failing to offer an instruction informing the jury that a prior inconsistent statement introduced to impeach a witness's in-court testimony may not be considered as substantive evidence of guilt. In the instant case, Williams, originally Beasley's co-defendant, had told the attorneys for both defense and prosecution that he would testify in the same way he had testified at his guilty plea hearing, i.e., naming Beasley as the co-participant in the rape. It is clear that Williams's actual rebuttal testimony surprised the prosecution by naming

as the third participant in the rape and robbery one Michael Smith instead of Beasley. Williams, when confronted with his prior testimony naming Beasley as the second rapist, simply stated that he didn't remember what he had previously said under oath. Beasley now claims that because the jury was never instructed to use the impeachment testimony only to judge the credibility of the witness, the jurors improperly regarded Williams's prior statement as substantive evidence of Beasley's guilt.

As a general rule of law, a defendant who neither offers his own jury instruction nor objects to the State's instruction waives his right to raise that claim of error on appeal. (*People v. Garza* (1981), 92 Ill. App. 3d 723, 415 N.E.2d 1328.) Beasley admits that he did not offer an instruction, he did not object to the State's offered instruction, and he did not mention the omission of a limiting instruction in his post trial motion. However, the appellate court has authority by rule to recognize plain errors or defects affecting substantial rights even though they were not brought to the attention of the trial court. (73 Ill. 2d R. 615(a).) Our initial determination, therefore, must be to decide whether the omission of a limiting instruction in this case was so prejudicial that it amounted to plain error. In such a case, the defendant will not be held to have waived his claim of error on appeal by failing to raise that issue before the trial court in a timely fashion.

The underlying reason for disqualifying witnesses' prior inconsistent statements as direct evidence of defendants' guilt is that such statements are usually unsworn hearsay and thus have no substantive testimonial value. (See *People v. Paradise* (1964), 30 Ill. 2d 381, 196 N.E.2d 689.) While impeachment of a witness by use of a prior contradictory statement is acceptable, it "has never been entirely satisfactory because of the difficult mental operation it imposes upon the jurors *** [by requiring them to] 'consider [the statement] for one purpose but avoid being influenced by it for another purpose.' " (*People v. Tate* (1964), 30 Ill. 2d 400, 403-04, 197 N.E.2d 26, 28, quoting Annot., 133 A.L.R. 1454, 1466 (1941).) In order for us to ascertain whether in the instant case the inadequately limited impeachment evidence resulted in reversible as opposed to harmless error, we must make the key determinations of (1) whether the prior statement bears any independent indicia of reliability, and (2) whether sufficient competent evidence had already been admitted reasonably to insure that the incompetent evidence did not have a prejudicial influence on the minds of the jury.

In support of his argument that the failure to give a limiting instruction amounted to plain error, defendant Beasley presents several

cases in which the same omission was held to be so grossly prejudicial that reversal of those defendants' convictions was necessary. In each of those cases, however, the prior contradictory statement was either unsworn or insufficiently corroborated by other competent evidence so that it appeared probable that the jurors had relied on the incompetent evidence in reaching their decision. The unqualified impeachment evidence judged to be reversible error in most of these cases involved prior unsworn statements, some allegedly coerced, made by co-defendants (*People v. Tate* (1964), 30 Ill. 2d 400, 197 N.E.2d 26; *People v. Tunstall* (1959), 17 Ill. 2d 160, 161 N.E.2d 300; *People v. Taylor* (1978), 66 Ill. App. 3d 907, 384 N.E.2d 558; *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752; *People v. Dandridge* (1970), 120 Ill. App. 2d 209, 256 N.E.2d 676) or informers (*People v. Paradise* (1964), 30 Ill. 2d 381, 196 N.E.2d 689). Further, in *Fields*, *Tunstall*, and *Tate*, the information in the prior inconsistent statement was dwelt on excessively, read into the record more than once, emphasized in the closing statement, or some combination of these. None of the prior statements used to impeach in these cases had any independent indicia of reliability.

The second reason reversals were granted in some of the cases cited by defendant Beasley is that the weakness of the rest of the prosecution's case rendered it highly probable that the jury would not have returned a verdict of guilty unless they had been improperly influenced by the prior contradictory statement, which had been introduced ostensibly only to impeach a witness's credibility. In *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752, the victims could not identify the defendant; the only corroboration of the defendant's participation in the crime, other than the impeaching statement, came from an "undisclosed" police informant. In *People v. Taylor* (1978), 66 Ill. App. 3d 907, 384 N.E.2d 558, the defendant's identification as a burglary suspect came through the prior inconsistent statement of one co-defendant that corroborated only one of the versions of the story given by a second co-defendant.

Also in this second category of cases, those in which insufficient competent evidence was present to support a guilty verdict beyond a reasonable doubt, two cases cited by defendant Beasley need special examination. In *People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746, and *People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126, the extrajudicial statements in question were not prior inconsistent statements used to impeach a witness's credibility, but instead were occurrence witnesses' hearsay statements repeated in police officers' testimony. In each case, the only evidence involving the

defendant in the crime was the testimony of the complaining witness. At trial, the police officers who had participated in the arrests testified that the complaining witness had told them the defendant had committed the crime. "The effect of such additional statements was to give the impression to the jury that the evidence against defendant was corroborated." (*People v. Wright* (1965), 65 Ill. App. 2d 23, 28, 212 N.E.2d 126, 128.) The court held that the officers' statements were inadmissible hearsay and their admittance prejudicial error.

It appears clear to us that the situation in the instant case is significantly different from that in all the cases presented by defendant as authoritative precedent. The pivotal differences are that Williams's prior inconsistent statement bears independent indicia of reliability in that it was sworn testimony given under oath in a judicial proceeding. Further, the statement was neither long, repeated, nor dwelt on by the prosecution. (See *People v. Tate* (1964), 30 Ill. 2d 400, 197 N.E.2d 26; *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752.) Finally, we believe that sufficient competent evidence had been presented for a jury to find defendant Beasley guilty of rape.

At oral argument, counsel for defendant Beasley concluded by saying, "Your Honors, we stand on *People v. Wright* [(1965), 65 Ill. App. 2d 23, 212 N.E.2d 126]." It appears clear to us that *Wright* is inapposite, dealing as it does with a totally uncorroborated identification by the complaining witness. Defendant Beasley would have us believe that the identification by the victim, the complaining witness in the instant case, is equally uncorroborated. A review of the two cases reveals the key difference: whereas in *Wright*, the hearsay which appeared to corroborate the victim's identification was merely a verbal repetition of that same victim's identification, the identification by the victim here was corroborated through another source entirely, namely Williams's prior judicial testimony.

■■■ In summary, we find that although trial error was committed by omitting an instruction limiting the jury's consideration of Williams's prior contradictory statement to the matter of his credibility, that error was harmless in light of the reliability of the statement and the other competent evidence offered. Consequently, we further hold that defendant Beasley's failure to raise the issue in a timely fashion results in waiver of the issue on appeal.

The second issue raised on appeal is whether the trial judge should have recused himself, and thereby granted defendant's motion for a substitution of judges. Defendant Beasley claims that because the trial judge's relative had been the victim of rape by a black man some four years previously, the trial judge is presumptively biased and

was unable to maintain judicial impartiality during the instant proceedings. We disagree.

First, "[t]he court itself is in the best position to determine whether it may be prejudiced against the defendant." (*People v. Campbell* (1975), 28 Ill. App. 3d 480, 487, 328 N.E.2d 608, 614.) Here the trial judge by denying the motion ostensibly asserted his lack of bias. Second, the trial judge's denial of the other pretrial motions in no manner indicates that he rendered any rulings that were contrary to established law. Third, we question the timeliness of defendant's motion where it was made after the trial judge had already ruled on the merits of several issues in the case and where the incident concerning the trial judge's relative had been a matter of public record since 1975, four years prior to the trial here. See *People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436; *People v. Perry* (1975), 35 Ill. App. 3d 50, 340 N.E.2d 585.

The cases cited by defendant in support of his recusal argument involve jurors, not judges, who were presumed to be prejudiced because experiences in their personal background were nearly identical to those at issue in the trial to which they had been assigned. (See *Jackson v. United States* (D.C. Cir. 1968), 395 F.2d 615.) It is clear to us that these cases are inapposite, for while the presumption in a jury trial is that predisposition of a juror will prevent him from being sufficiently impartial to be a fair juror, the "sound presumption [is] that the court in a bench trial relies only on proper evidence in reaching a determination on the merits." (*People v. Berland* (1978), 74 Ill. 2d 286, 310, 385 N.E.2d 649, 660, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63.) Indeed, the presumption is so strong that "ordinarily the fact that a judge has ruled adversely to a defendant in *** a *** [prior] case does not disqualify that judge from sitting in subsequent *** cases in which the same person is a party." *People v. Vance* (1979), 76 Ill. 2d 171, 178, 390 N.E.2d 867, 870.

"The appellate court has repeatedly indicated that the burden of establishing actual prejudice [of the trial judge in a situation such as presented here] rests on the defendant." (*People v. Vance* (1979), 76 Ill. 2d 171, 178, 390 N.E.2d 867, 870.) In the instant case, defendant Beasley has been unable to indicate even one incident as an example of the trial judge's alleged bias. Our careful review of the complete record in this case leads us to the obvious conclusion that the trial judge acted with all due fairness and objectivity, and in conformity with all required judicial standards. Since the defendant has made no effort to show any examples of actual prejudice on the part of the trial judge, we necessarily conclude that defendant's claim is

without merit. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.) We note that a trial judge is presumed "to disregard all evidence heard except that which is competent and relevant, and is considered to possess such legal discernment when *** [making his determination]." *People v. Grabowski* (1957), 12 Ill. 2d 462, 467, 147 N.E.2d 49, 52.

Finally, in response to Beasley's claim that he would have chosen a bench trial if the judge had recused himself, we note that Beasley requested a jury trial from the very outset of the case, long before he claims he learned of the trial judge's personal connection with a similar rape incident. It is clear to us that Beasley's allegation that he was forced to choose a jury trial against his wishes and was thereby prejudiced is directly contradicted by the record.

For all the reasons discussed above, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and ROMITI, J., concur.