THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT E. ROBINSON, Defendant-Appellant.

Third District   No. 76-23

Opinion filed March 23, 1977.

Larry Mackey and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Keefe, State's Attorney, of Rock Island (Robert M. Hansen and James E. Hinterlong, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

As a result of a trial in the Circuit Court of Rock Island County, a jury found the defendant, Robert Robinson, guilty of armed robbery. Judgment was entered on that verdict, and the defendant was sentenced to 30 to 60 years imprisonment. He now appeals.

On September 9, 1975, an indictment was filed against the defendant charging him with the armed robbery of $220 in currency and "various narcotic drugs" from John Reimers. Following the defendant's discovery motion, the State provided a list of the physical evidence which might be presented at the trial. This included two suitcases, one black and one blue, with personal clothing and pills. Subsequently, the defendant, by separate motions, sought to suppress the items seized in a search of the automobile in which the defendant was riding on the night of his arrest and the items seized in a search of the defendant's hotel room. These motions described the property seized and included, among the items seized in the automobile, a suitcase containing clothing and pills, while identifying the black suitcase as one of the items seized from the hotel room.

At the conclusion of the first hearing on the motions to suppress, the trial judge denied the motion to suppress items taken from the car but granted the motion to suppress all evidence unlawfully obtained from the defendant's hotel room. Specifically, the trial court ordered "a brown toilet case and a small black suitcase" be suppressed.

On the day of the trial, the voir dire proceedings were interrupted to consider a new motion to suppress presented by the defendant. During this hearing, the question of where the black suitcase was seized was rehashed. Several witnesses testified. Ms. Margie Irene Boyd testified that there was one suitcase on the floor in the back seat of the car and, although she did not remember the color, it was a larger suitcase than the one (black) present in the courtroom. The defendant reasserted that he had a suitcase in the car but he last saw the black suitcase in the hotel

room. Wanda Rhodes, who had borrowed and driven the car on the night of the defendant's arrest, testified she had never seen the black suitcase.

Two police officers also testified. Captain Wayne Carey of the Moline Police Department stated he recalled observing a black suitcase in inventorying the defendant's belongings, but not the blue one. He stated he had received the black suitcase from the evidence locker and not from Detective Cunningham. Detective Cunningham, who had conducted the search of the hotel room, later testified at the trial that he had not seen the black suitcase until he accompanied Captain Carey to the property room in order to examine it. He also stated that, although he made no report of his own, he found no mention in Captain Carey's report of the black suitcase with regard to the search of the hotel room. However, on the redirect examination of Captain Carey the defense introduced a police report which the witness acknowledged as being made by him after the inventory. That report indicated that the black suitcase and the brown toilet case were received by him from Detective Cunningham.

Sergeant Don Heston, who alone had searched the automobile, testified that he found two suitcases, including the black one. However, Sergeant Heston's police report did not mention the black suitcase, although he did list the blue suitcase as an item seized during the search of the car. When asked to explain why his report did not mention the black suitcase and the report of the hotel search did, the witness replied, "Mine was merely an error."

Following the hearing the trial court denied the new (or second) motion to suppress. However, the State did agree to remove certain items from the black suitcase which could not be tied in to the case by the State in order to avoid prejudicing the jury. The State left four drug bottles and a shirt in the black suitcase for trial.

During the trial a controversy arose over the testimony of Wanda Rhodes, with whom the defendant had been living. She was called as a witness for the State. However, when Ms. Rhodes appeared to be unable to recall the details of her consent to the search of the car, she was asked if she had any condition which might affect her memory. She responded that she suffered from epilepsy which often occasioned a lapse of memory. Ms. Rhodes was asked several questions concerning a conversation she had with the defendant in which he told her he robbed a drug store. She said she couldn't remember the conversation. The State then moved to call Ms. Rhodes as a court's witness, "not necessarily because I question her veracity or her integrity, but I would like permission to ask leading questions * * *. [A]nd while I am not wholly taken by surprise and would not swear that I am wholly taken by surprise, I am a little bit surprised about this particular occurrence we have had right now. And I would merely ask permission to ask leading questions of

the witness." At this point in the proceeding, the trial judge refused the State's motion but allowed the State to question the witness outside the presence of the jury. During this questioning, the witness testified she remembered writing down the statement of the defendant and she remembered telling the police about it, but she did not remember the conversation in which the defendant was supposed to have made that statement to her. Ms. Rhodes also admitted she was a very close friend of the defendant and that she was concerned about whether he would be found guilty or not guilty. The trial judge reserved ruling on the motion, and the jury returned. After a few questions, the witness again indicated she could not remember the conversation, and, upon renewed motion of the State, the trial judge designated Ms. Rhodes a court's witness. The defense counsel's objection was overruled.

While Ms. Rhodes was a court's witness, the following exchange occurred between the witness and the State's Attorney:

"Q. Isn't [*sic*] a fact that you had a conversation with the defendant, Mr. Robinson, in which Mr. Robinson stated to you that he had robbed a drug store?

A. That I don't remember. I remember telling the officers the next day what I wrote on that paper, but I do not remember discussing anything of that.

Q. Are you telling us now that you do not remember telling the officers that?

A. I remember telling what I wrote on that paper.

Q. Do you remember telling that to the officers?

A. Yes.

Q. And do you remember that conversation that you are referring to?

A. Yes.

Q. And isn't it a fact that in that conversation you were referring to the defendant told you that he had robbed a drug store in Moline?

A. That is what I told them when they asked me.

Q. Is that what the defendant told you?

A. That I don't remember.

Q. Did you remember it on July 3rd when you were talking to the officers?

A. The date I don't know about for sure.

Q. Well, the date that the defendant was arrested at the LeClaire, when you were talking to the officers, did you remember it then? Did you remember that conversation you had with the defendant then?

A. Yes.

Q. And was that, to the best of your recollection at that date, the truth?

A. When we was going—when we was going to Tennessee."

The State's examination concluded with a series of questions concerning the witness' relationship with the defendant. At no time during the examination did the court inform the jury that any reference to Ms. Rhodes prior inconsistent statements could not be considered as substantive evidence.

On the next morning of the trial, the defendant reopened the motion to suppress, contending that the black suitcase had been suppressed earlier. Following the resulting hearing, the rooms manager of the hotel testified she observed a black attache' case full of "what looked like drugs" in the defendant's hotel room on the morning following the defendant's arrest.

Once again Detective Cunningham was called to testify at this suppression hearing. He testified he did not remember finding a black suitcase in the hotel room and that he did not know how Captain Carey got the idea he found a small black suitcase. Captain Carey testified he received the black suitcase from Sergeant Chet Zelnio who managed the property room and he did not know where Sergeant Zelnio had gotten it. In attempting to explain the mistake in the report, Captain Carey stated he "must have been confused."

Sergeant Zelnio testified that although he did not know who had originally brought the suitcase to the property room, he would have to assume that it was the officer who made out the property sheet. That officer was identified as Officer Etheridge. Later, Sergeant Zelnio changed his testimony, stating that it was Sergeant Heston who placed the suitcase in the property room. However, the witness admitted he really could not tell if he had seen Sergeant Heston that morning.

Following the presentation of this evidence, the trial court denied this motion to suppress. Other evidence produced at the trial is irrelevant for this appeal.

■■ The defendant contends that the trial court erred in designating Ms. Rhodes a court's witness. The decision to call a witness as a court's witness is within the discretion of the trial court (*People v. Henson* (1963), 29 Ill. 2d 210, 193 N.E.2d 777), and that decision will not be disturbed on appeal, absent an abuse of discretion. (*People v. Robinson* (1st Dist. 1974), 21 Ill. App. 3d 343, 315 N.E.2d 95; *People v. Stoudt* (3d Dist. 1967), 90 Ill. App. 2d 140, 232 N.E.2d 800.) In order for the court to consider calling a witness as a court's witness the party asking the court to adopt the witness must lay a proper foundation. That foundation requires a showing that the witness' integrity or veracity is doubtful, that neither side desires to vouch for his testimony, that the testimony relates to direct issues in the case and the testimony sought to be elicited is necessary to

prevent a miscarriage of justice. *People v. Dennis* (1970), 47 Ill. 2d 120, 265 N.E.2d 385; *People v. McKee* (1968), 39 Ill. 2d 265, 235 N.E.2d 625; *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516; *People v. Siciliano* (1955), 4 Ill. 2d 581, 123 N.E.2d 725; *People v. Reddock* (2d Dist. 1973), 13 Ill. App. 3d 296, 300 N.E.2d 31.

■■ The State's Attorney in the instant case stated he did not challenge Ms. Rhodes' veracity or integrity. He also admitted that he was not wholly surprised by the witness' responses to his questions. Based on these facts, the foundation for designating Ms. Rhodes a court's witness is questionable at best. Nevertheless, we need not decide the propriety of the foundation because the State's examination of the court's witness requires a reversal.

■■ The trial court committed reversible error by allowing the State's Attorney to utilize impeachment questioning about a prior out-of-court statement by the witness as substantive evidence. While it is true that both sides may cross-examine a court's witness and may impeach that witness (*People v. Mostafa* (1st Dist. 1971), 5 Ill. App. 3d 158, 274 N.E.2d 846), the record here indicates that the purpose of the State's cross-examination was not only to impeach the witness, but also to introduce an unsworn statement as testimony of the defendant's participation in the crime. For the trial court to allow this testimony for this substantive purpose is prejudicial error. (*People v. Kimbrough* (1st Dist. 1970), 131 Ill. App. 2d 36, 266 N.E.2d 431; *People v. Dandridge* (4th Dist. 1970), 120 Ill. App. 2d 209, 256 N.E.2d 676.) Furthermore, the Illinois Supreme Court has held that "the admission of a confession or a statement [by a witness against the accused] made outside the presence of a defendant is not competent, even for the purpose of impeachment, where such statement or confession bears directly upon a defendant's guilt or innocence of the crime, and is likely to have a prejudicial influence on the minds of the jury." *People v. Tunstall* (1959), 17 Ill. 2d 160, 166, 161 N.E.2d 300.

■■■ The State asserts that the defendant waived his right to raise this issue on appeal by failing to object to the State's cross-examination and failing to request a limiting instruction to the jury. With this contention we can not agree. The prejudice incurred because of the procedure employed by the State is plain error. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a); *People v. Fields* (1st Dist. 1975), 31 Ill. App. 3d 458, 334 N.E.2d 752; *People v. Brown* (4th Dist. 1972), 7 Ill. App. 3d 748, 289 N.E.2d 452.) Nor can we conclude that this is harmless error. There is a reasonable possibility that this testimony contributed to the conviction. Therefore, the error here can not be considered harmless. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *Fahy v. Connecticut* (1963), 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229.

The last issue raised by the defendant is whether the trial court erred by

denying the defendant's motion to suppress. Although, because of the preceding holding in this case, we need not decide this issue, we feel compelled to point out that the confusion in the presentation of the evidence concerning suppression leaves the trial court's ruling somewhat suspect. We are especially concerned that the integrity of the evidence is not established. We expect this situation will be corrected on remand.

Accordingly, we reverse the judgment of the Circuit Court of Rock Island County and remand the cause for a new trial.

Reversed and remanded.

ALLOY, P. J., and STOUDER, J., concur.