THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT TRIPLETT, Defendant-Appellant.

First District (3rd Division)    No. 79-215

Opinion filed August 20, 1980.

James J. Doherty, Public Defender, of Chicago (Clifford G. Kosoff and Timothy O'Neill, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Wesley H. H. Ching, Assistant State's Attorneys, of counsel), for the People.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

A jury found Robert Triplett, the defendant, guilty of murdering his wife, Ruth Triplett. He was sentenced to the penitentiary for a term of 50 years. On appeal the defendant contends that he was denied a fair trial because the trial judge erred in: (1) allowing a witness to be designated as a court's witness and permitting impeachment of that witness on a collateral matter by use of a prior inconsistent statement; (2) failing to admonish and instruct the jury on the limited use of the prior statements; and (3) refusing to give an instruction on circumstantial evidence requested by the defendant.

Chesley Triplett, a son of the defendant and the victim, testified that he left his parents' home on the afternoon of October 1, 1977, and returned at approximately 3 a.m. the next morning. When he returned, he saw his

mother sleeping alone in her bedroom. He went to his bedroom in the rear of the apartment, undressed, turned the radio on, shut the door and went to sleep. He was awakened by his father who stood three to four feet away and pointed a revolver at him. Another revolver was tucked in defendant's belt. There were no cuts or bruises on the defendant's face at this time. The defendant told Chesley to dress, hit him with the gun and said, "I will blow all you motherf...ers away." While the gun was pointed at him, Chesley was told to check his mother. Chesley went with the defendant into the victim's bedroom and the defendant told Chesley to call the police. After Chesley dialed 911, the defendant took the telephone receiver and said, "You better send an ambulance because she's going to need it." The defendant then left the apartment.

Joe Lee testified that he was married to defendant's niece. He stated that on October 2, 1977, between 7 and 8 a.m., his wife, who was not at home at the time, received a telephone call. Lee testified that he could not identify the caller. The prosecutor attempted to rehabilitate him on this point. Lee maintained that, although he had previously identified the caller as Robert Triplett, he did not know the identity of the caller.

The State requested that Lee be called as a court's witness because Lee's testimony had surprised the prosecutors. This request was allowed and the State questioned Lee about a conversation he had with certain Chicago Police Department investigators on October 4, 1977. Over objection, the following questioning occurred:

"[State's Attorney]: Do you recall stating to Investigators Cornfield and Diogourdi or two officers whose names you don't know the following: You reconized [sic] the caller to be Robert Triplett, and that Robert asked for your wife, Beatrice, you informed Robert that Beatrice was not home, and Triplett stated I killed Ruth.

Do you recall saying that to the policemen?

Joe Lee: I recall stating to the policemen that I received a phone call. I still was in bed when the phone rang, and they asked for my wife, Bea, and I stated to him, I stated that my wife was not at home, * * * and they said I just killed Ruth, and hung up—

[State's Attorney]: So, your testimony is you never told the police that you reconized [sic] the voice to be Robert Triplett?

Joe Lee: I testified to the police that I told my wife that I believed that her uncle called and said he just killed Ruth.

[State's Attorney]: Who was her uncle?

Joe Lee: Robert Triplett."

Investigator Robert Cornfield testified over objection that Joe Lee told him that the voice of the caller belonged to Robert Triplett and that he recognized the voice from having talked to Triplett on prior occasions.

Shaku Teas, a pathologist for the Institute of Forensic Medicine (Cook

County Morgue), testified that she performed an autopsy on the victim which revealed the presence of four gunshot wounds. It was her opinion that the gun was fired from a distance of three to five feet away. She stated there were no defensive wounds on the victim's body and that in her opinion the manner of death was homicide.

Officer Moss of the Chicago Police Department testified that he arrived at the Triplett apartment at 5:30 a.m. on October 2, 1977. He secured the area until crime laboratory personnel arrived. Officer Thomas Ginnelly, a police laboratory technician, testified that he viewed the victim's body and observed no defense wounds. He also viewed the victim's bedroom and observed a large amount of blood and a fired bullet on the victim's bed. Another fired bullet was discovered lodged in the wall between the bedroom and closet. No firearms were recovered from the bedroom and no evidence of a struggle existed.

The defendant testified on his own behalf and stated that he and his wife argued on the evening of October 1, 1977, and that he left their home on several occasions that night to avoid continued argument. The defendant returned home at about 5 a.m. on October 2 and found his wife sitting on the bed. They began to argue again; and when the defendant indicated he was going to leave, his wife pulled out his gun. The defendant reached for his coat and swung it at the gun. The gun discharged into the wall. The defendant grabbed his wife and the gun discharged again into the wall. They struggled and fell onto the bed and the gun went off three or four more times after which the victim lay still. The defendant testified that he ran to the back door and found it locked. He then went to Chesley's room, woke Chesley and told Chesley to call the police and an ambulance. The defendant left the apartment and turned himself in at a police station two days later.

The defendant denied having a gun in his hand or in his belt when he entered Chesley's room. He also denied shooting his wife or threatening Chesley. He said the gun his wife used belonged to him and was kept in a dresser. On cross-examination, the defendant admitted that on October 2, 1977, he called the Lee residence but did not remember saying that he killed his wife.

I.

■■ ■ The defendant argues on appeal that he was denied a fair trial because Joe Lee was improperly made a court's witness in order to impeach him with a prior inconsistent statement.[1] (The decision to call an individual as a court's witness is discretionary with the trial judge (*People v.*

---

[1] The State argues that the defendant waived this argument because he did not object when Lee was made a court's witness. We believe that the defendant's objection when the State introduced Lee's prior statement was sufficient to preserve this error for review.

*Henson* (1963), 29 Ill. 2d 210, 193 N.E.2d 777), and the decision will not be disturbed on appeal absent an abuse of discretion. (*People v. Robinson* (1977), 46 Ill. App. 3d 713, 361 N.E.2d 138.) The requisite foundation for the calling of a court's witness consists of a showing that the witness' integrity or veracity is doubtful so that neither side will vouch for his testimony and that the testimony of the witness will relate to direct issues and is necessary to prevent a miscarriage of justice. (*People v. Dennis* (1970), 47 Ill. 2d 120, 265 N.E.2d 385, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2212; *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516.) The effect of declaring an individual a court's witness is to open the witness to cross-examination and impeachment by either side. *People v. Chitwood* (1976), 36 Ill. App. 3d 1017, 344 N.E.2d 611.

■■ A witness may be impeached by prior inconsistent statements only if his testimony is damaging to the examiner's case. The fact that the witness could have, but did not, testify about a fact which would have been favorable to the examiner's case, since the witness had made such a favorable statement out of court, is of no consequence. (McCormick, Evidence §36, at 71-72 (2d ed. 1972.) For example, in *People v. Johnson* (1929), 333 Ill. 469, 165 N.E. 235, the court held that it was error to make an individual the court's witness to permit impeachment with a prior statement that the defendant had sold the witness a stolen radio when she testified that she bought the radio from someone else. It also was error to impeach a court's witness with a prior statement that the defendant admitted to the commission of burglaries when the witness did not testify to this fact on direct examination. *People v. Chitwood.*

The prejudice resulting from such impeachment was addressed in *People v. Grigsby* (1934), 357 Ill. 141, 191 N.E. 264. In that case, a woman was made a court's witness after her direct examination by the prosecutor became unsatisfactory. The prosecutor then was permitted to question the witness about a prior statement she had given that the defendant, who was charged with assault with intent to murder, had come to her home on the night of the shooting and told her he shot some people. The reviewing court held that the impeachment was improper since "the issue [was] not whether the defendant said 'he had shot a couple of guys,' but whether he in fact shot them." (357 Ill. 141, 148, 191 N.E. 264, 267.) The court further stated that:

> "All of these matters sought to be introduced by the indirect method of advance impeachment of a witness who had not testified to the contrary are collateral to the main issue. * * * If the State's attorney could be permitted, under these circumstances, to prove, by way of advance impeachment, that the witness said that the defendant had said certain things, it would present a situation of appalling seriousness. The witness could not be indicted for perjury, the

previous statement not being under oath and there being no provision for such an oath. If the witness admitted making the previous statement, it would prove nothing except that he, an admittedly unreliable witness, had said so. If the witness denied making the statement the matter would necessarily end there, because to pursue it further would be trying a collateral issue rather than a fact material under the indictment." 357 Ill. 141, 148-49, 191 N.E. 264, 267-68.

■■ In the instant case, the prosecutor questioned Lee on direct examination regarding a telephone call he answered on the morning of October 2, 1977. Lee was unable to identify the caller. After an unsuccessful attempt to rehabilitate Lee, the prosecutor indicated during a sidebar that he was surprised with Lee's responses and had expected Lee to say he knew that the caller was the defendant. The court made Lee the court's witness and allowed the prosecutor's attempt to impeach Lee with a statement he had given certain police officers on October 4.[2]  This impeachment was improper because Lee's testimony prior to the impeachment was not damaging to the State. The cross-examination of Lee by the prosecution did not involve the issue of the defendant's guilt and was altogether collateral. Similarly, it was error for the State to further impeach Lee's testimony by questioning Investigator Cornfield because the State was trying a collateral issue. See *People v. Grigsby; People v. Johnson; People v. Lawson* (1980), 86 Ill. App. 3d 376, 407 N.E.2d 899.

In addition to arguing that Lee should not have been impeached, the defendant contends, alternatively, that the impeachment technique utilized by the State was improper. The defendant recognizes the general rule that prior inconsistent statements, while not competent as substantive evidence, can be used for impeachment purposes to determine credibility. (See *People v. Collins* (1971), 49 Ill. 2d 179, 274 N.E.2d 77; *People v. Lucas* (1978), 58 Ill. App. 3d 541, 374 N.E.2d 884.) However, he contends that *People v. Tunstall* (1959), 17 Ill. 2d 160, 161 N.E.2d 300, and its progeny (see, *e.g., People v. McKee* (1968), 39 Ill. 2d 265, 235 N.E.2d 625; *People v. Ellis* (1976), 41 Ill. App. 3d 377, 354 N.E.2d 369; *People v. Kimbrough* (1970), 131 Ill. App. 2d 36, 266 N.E.2d 431), prohibit the use of a prior inconsistent statement to impeach a witness when the prior statement bears directly on the issue of defendant's guilt or innocence.

The *Tunstall* rule was eroded in *People v. Tate* (1964), 30 Ill. 2d 400, 197 N.E.2d 26, where the court specifically held that it would not adhere to the broad rule announced in *Tunstall*. (30 Ill. 2d 400, 403-04, 197 N.E.2d 26, 29.) In *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770, the court held

---

[2] Although not raised by the defendant, we note that the impeachment of Lee was unnecessary since he admitted making the prior statement identifying the defendant as the caller.

that prior inconsistent statements which bear directly on a defendant's guilt could be used for impeachment purposes provided the jury was cautioned at the time of impeachment and instructed at the end of the trial that the statement could not be given substantive effect. (See also *People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804 (use of prior inconsistent statement bearing directly on defendant's guilt is permissible provided there is no impart of substantive character to statement).) Thus, on the basis of this case law, prior inconsistent statements bearing directly on the defendant's guilt can be used for impeachment purposes provided such use is limited and a qualifying instruction is given.

The defendant further argues alternatively that because the trial court failed to admonish the jury as to the limited purpose for which Lee's prior statement could be considered, prejudicial error was committed. We agree. The jury must be informed and instructed that the prior statement implicating the defendant must not be considered as substantive evidence. *People v. Collins*; *People v. Tate*; *People v. Lawson*; *People v. Irons* (1976), 39 Ill. App. 3d 993, 350 N.E.2d 754.

■■ We hold that error was committed when the State was allowed to impeach the court's witness with prior inconsistent statements implicating the defendant when there was no justification for impeaching the witness. Further, assuming Lee could have been impeached as a court's witness, error was also committed because the jury was never informed nor instructed that the statements could not be considered as substantive evidence. Since we do not find that other competent evidence overwhelmingly establishes defendant's guilt beyond a reasonable doubt, reversal is required, and the cause must be remanded for a new trial.

## II.

The defendant also contends that the trial court committed reversible error in rejecting a portion of his proffered jury instruction. Since the propriety of this instruction may arise on retrial, we will address this issue.

The trial judge refused to include the second paragraph of the defendant's instruction relative to circumstantial evidence:

"You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

This instruction was Illinois Pattern Jury Instruction—Criminal No. 3.02. The committee note on the use of this paragraph indicates that it "should be given only when the proof of guilty is *entirely* circumstantial"; and our courts have consistently applied that rule (see, *e.g., People v. Brown* (1974), 56 Ill. 2d 312, 307 N.E.2d 356, *rev'd on other grounds* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Boose* (1978), 65 Ill. App. 3d 127,

382 N.E.2d 532; *People v. Schoeneck* (1976), 42 Ill. App. 3d 711, 356 N.E.2d 417).

The defendant argues that the trial court improperly relied on *People v. Brooks* (1972), 7 Ill. App. 3d 767, 289 N.E.2d 207, in support of its rejection of the proffered instruction. We agree that *Brooks* is inapplicable because in that case the direct evidence of the defendant's guilt was the substantive testimony of two witnesses that the defendant had admitted his guilt to them. There was no admissible evidence of an admission in the instant case since the impeachment of Joe Lee was improper.

■■ However, irrespective of the court's unjustified reliance on *Brooks*, the evidence presented in the instant case was not entirely circumstantial. Any statements made by the defendant are to be considered as direct evidence. (*People v. Spataro* (1978), 67 Ill. App. 3d 69, 384 N.E.2d 553.) In *Spataro* the defendant was convicted of murdering his girlfriend. There were no witnesses to the shooting. The defendant had given two statements to the police and testified at trial in substantial conformance with the second statement. The defendant testified that the victim became upset when he prepared to leave her home. He stated that his gun accidentally discharged as he was removing it from his belt. The court held that the defendant's statements explaining how the incident occurred constituted direct evidence that justified the trial court's rejection of the second paragraph of the tendered instruction. Similarly, in the instant case the defendant testified as to the accidental nature of his wife's shooting which constituted direct evidence. Thus, the trial judge was correct in submitting the instruction to the jury without the second paragraph.

The defendant may have testified in the instant case because the State in error impeached the court's witness with prior inconsistent statements implicating the defendant. Therefore, if on retrial the defendant does not testify, undoubtedly all of the evidence would be circumstantial, and under these conditions the proffered instruction should be given.

For the reasons discussed in part I of this opinion, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

McNAMARA and SIMON, JJ., concur.