THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DANIEL TAGLIA, Defendant-Appellant.

First District (3rd Division)   No. 82—5

Opinion filed March 16, 1983.

Ackerman & Egan, Ltd., of Chicago (Allan A. Ackerman, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Stoioff, and Stephen Erhard Eberhardt, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant Daniel Taglia was charged with murder and armed violence. A jury found him guilty of both crimes, and the court sentenced him to 25 years. On appeal defendant contends that the trial court erred in denying his motion to suppress evidence; that prejudicial error resulted from the State's use of a prior inconsistent statement as substantive evidence of guilt absent a proper limiting instruction; and that prosecutorial misconduct so permeated the whole trial that it deprived him of a fair trial.

Three eyewitnesses testified that on the evening of October 29, 1979, they saw defendant shoot and kill Phil Shepherd on a street in Cicero. One of the witnesses was a neighbor who was walking her dog when the shooting occurred. She identified defendant at a lineup and at trial. The other two witnesses were Brian Brusaw and Scott Adams.

Brusaw testified that on the evening in question he and defendant were in a tavern when they were told that the deceased wanted to see Brusaw. After Brusaw gave a gun to defendant, they went outside. Defendant and the deceased started arguing and defendant shot the deceased. The day before, Brusaw and the deceased, using the same gun unsuccessfully tried to rob a man of money and narcotics. The pair also committed a robbery that morning. Brusaw previously had been convicted of burglary, theft and aggravated battery, and was currently serving five years for burglary. In exchange for his testimony, the State had agreed not to oppose a sentence reduction to time considered served. Brusaw had been hospitalized a few times for overdosing on drugs. He lived with defendant's sister in an apartment building owned by defendant.

Adams testified that he and the deceased were driving around when they saw Brusaw and defendant. When the deceased emerged from the vehicle, he and defendant shouted at each other. Defendant then shot the deceased. Adams had a robbery charge pending against him. He had talked to the prosecutor about the charge, but they made no promise to him.

Defendant testified that he did not know the deceased and had not shot him. That morning, defendant heard the deceased storm out of Brusaw's apartment shouting threats. Defendant warned his sister

and Brusaw that if they were having trouble they should call the police.

Defendant initially contends that the trial court erred in denying his motion to suppress evidence. The following pertinent testimony was adduced at the hearing on the motion.

Officer Leonard Rutka of the Cicero Police Department testified that after he left the scene of the shooting he went to defendant's apartment. He was invited in by defendant's 21-year-old daughter Amy. The officer informed Amy that he was investigating a shooting and she replied that she knew what had happened. She told the officer that she lived in the apartment and gave him permission to search the premises. The officer recovered a gun with one spent shell.

Defendant testified that his daughter lived in River Forest and not with him. She kept no clothes or possessions at his apartment and visited him approximately once a month.

Amy Taglia testified that she lived with her mother since her parents' divorce when she was five years old. She visited her father occasionally but had no possessions at his apartment. She did not recall whether she told the police she resided in the apartment or whether she gave them permission to enter the premises.

■■ We view the matter of whether defendant's daughter had authority to consent to the search of the premises and whether she did in fact give such consent to have been questions of the credibility of the witnesses. A determination of that credibility is within the province of the trial court, and we may not disturb those findings unless they are contrary to the manifest weight of the evidence. (*People v. Householder* (1980), 81 Ill. App. 3d 31, 400 N.E.2d 988.) The trial court here accepted the testimony of the police officer and rejected the evidence offered by defendant. We may not substitute our judgment for that of the trial court.

Defendant next contends that prejudicial error resulted from the State's use of a prior inconsistent statement of defendant's sister as substantive evidence of defendant's guilt without giving a proper limiting instruction.

When the State called Mary Buse, defendant's sister, as a witness, she testified that defendant was not present when the shooting occurred. The prosecutor expressed surprise and was granted leave to examine her as a hostile witness pursuant to Supreme Court Rule 238. (87 Ill. 2d R. 238.) Through cross-examination, her five-page statement was read to the jury. The trial court did not give, nor did defendant request, a limiting instruction that the statement could not be used as substantive evidence of defendant's guilt. The assistant

State's Attorney who took the sister's statement testified and also read the statement to the jury. The statement was introduced into evidence and, at the State's request, was given to the jury for use during their deliberations. During closing argument, among other references to defendant's sister, the prosecutor stated as follows:

"She told Mr. Cavanaugh by her written signed statement, that she saw her brother, Dan Taglia, at the intersection of 21st Place and 49th Avenue, and not only did she see him, but she saw Ricky Shephard [sic] on the street at the same time she saw Dan Taglia. She saw no weapon in the hand of Ricky Shephard [sic]. She saw her brother with a gun in his hand right after hearing a shot. That's what Mary Buse saw. She saw Dan Taglia at the intersection two years ago and won't say it now."

During rebuttal closing argument, defense counsel objected to the prosecutor's further reference to defendant's sister because she had not been mentioned during defendant's argument. The prosecutor twice explained, in the presence of the jury, that it was proper argument because it referred to her identification of defendant.

The only instruction concerning the sister's out-of-court statement came in the court's charge to the jury. The court gave Illinois Pattern Jury Instruction, Criminal, No. 3.11 (2d ed. 1981) (hereinafter cited as IPI), which informed the jury that prior inconsistent statements could only be considered in determining credibility.

■ The decision to call an individual as a court's witness is discretionary with the trial court, and the decision will not be disturbed on appeal absent an abuse of discretion. (*People v. Robinson* (1977), 46 Ill. App. 3d 713, 361 N.E.2d 138.) In the present case, the trial court's decision to call defendant's sister as a court's witness was not an abuse of discretion.

■ ■ Remaining for our consideration, however, is defendant's argument that the impeachment technique employed was improper. Prior inconsistent statements, while not competent as substantive evidence, may be used for impeachment purposes to determine credibility. (*People v. Collins* (1971), 49 Ill. 2d 179, 274 N.E.2d 77.) And prior inconsistent statements which bear directly on defendant's guilt may be used for impeachment purposes provided the jury is cautioned at the time of impeachment and instructed at the end of the trial that the statements could not be given substantive effect. (*People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804; *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770.) Here, no such caution or instruction was given to the jury. The instruction which was given, IPI Criminal No.

3.11, was insufficient in itself to inform the jury that the impeachment evidence could not be considered substantively. (*People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746.) While a defendant who fails to offer a jury instruction generally waives his right to raise that claim of error on appeal, this court may recognize plain errors or defects affecting substantial rights, even though they were not brought to the attention of the trial court. (87 Ill. 2d R. 615(a).) We believe that in the present case, the omission of a caution and limiting instruction, coupled with the impeachment technique utilized by the State in regard to the sister's statement, was so prejudicial that it amounted to plain error. (*People v. Riley; People v. Robinson* (1977), 46 Ill. App. 3d 713, 361 N.E.2d 138.) The information contained in the sister's prior inconsistent statement was read into the record twice and was dwelt on excessively. The prosecutors emphasized the statement during closing argument and indeed, over objection, candidly informed the court and jury that the statement was an identification and thus had substantive effect. (See *People v. Tate* (1964), 30 Ill. 2d 400, 197 N.E.2d 26; *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752.) Nor can we say that the other competent evidence so overwhelmingly established defendant's guilt beyond a reasonable doubt that the error was harmless. (*People v. Triplett* (1980), 87 Ill. App. 3d 763, 409 N.E.2d 401.) Three eyewitnesses identified defendant, but only one of the witnesses was unbiased and without something to gain. Defendant took the stand and denied committing the crime. He was entitled to a trial free from such harmful error.

In view of our holding, it is unnecessary to consider defendant's other claim that certain comments of the prosecutor deprived him of a fair trial. The remarks are unlikely to recur in a new trial.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McGILLICUDDY and RIZZI, JJ., concur.