The appellant was convicted of murder, a violation of §13A-6-2, Code of Alabama 1975, and was sentenced to life imprisonment.
 I
During the course of investigating the murder in question, Montgomery police officers talked to Daniel Hunter, who lived in the vicinity of the murder. Hunter told the police that he had seen the appellant stab the deceased. The police took Hunter to the police station, where a videotape of his statement was made. Based upon Hunter's statement, and also upon other evidence gathered by the police, the appellant was arrested and subsequently indicted for murder.
At the trial, the state did not call Hunter as a witness during its case in chief. The appellant called Hunter to the stand and elicited testimony about the killing. On cross-examination by the state, Hunter identified the appellant as the man he had seen stab the deceased. He testified:
"A. A man was getting stabbed down there.
"Q: Who was that man?
 "A: Let's see. I think his name was Early Patterson. I think . . .
 "Q: All right, sir. And you saw Shug [the appellant] stabbing him, didn't you?
"A: Yes, sir.
 "Q: All right. Where did Early Patterson go after he was stabbed? Could you see?
"A: No, sir. It was too dark.
"Q: Well, was it too dark where he ran?
"A: Where he ran?
"Q: Yes.
 "A: He ran in the alley because the alley is real dark.
"Q: The alley is real dark?
"A: Yes, sir.
 "Q: Okay. When he ran into the alley, you saw somebody chasing him?
"A: Oh, yes, sir.
"Q: And that was Shug?
"A: Yes, sir.
 "Q: What happened when you saw him run into the alley?
 "A: I want [sic] down in there, and I saw Shug stabbing the man in the alley.
However, when defense counsel again questioned Mr. Hunter on redirect, he went back to the version of his testimony that he did not see the stabbing, and that he had been coerced by the authorities into saying otherwise:
 "Q: Tell the jury why you told the police what you told them.
"A: Well, what I told them? Why I told them?
"Q: Why you told the police what you did tell them.
 "A: Yeah. They started offering money and stuff, you know.
"Q: They were offering you money?
"A: Yes.
"Q: Were you on any kind of probation at the time?
"A: Oh, yes, sir.
"Q: What did they say about your probation? *Page 1137 
"A: They said they could get me off probation.
 "Q: Then what did you do after you they [sic] told you that?
"A: What did I do?
"Q: Yeah.
"A: I told them.
"Q: Told them you saw the stabbing?
"A: Yes, sir.
 "Q: When you were under oath at police headquarters, the day we had another hearing, what you told the Judge under oath down there was that you were at the house.
"MR. MADDOX: I object again.
"THE COURT: Overruled.
"(BY MR. REESE:)
"Q: And you heard something?
"A: I heard.
"Q: And you didn't actually see anything.
"A: I heard the screaming.
 "Q: Then you went out and saw the man laying on the ground with the stab wounds?
"A: Yes, sir.
"Q: And that's all you know?
"A: (Nods head to indicate the affirmative.)"
On re-cross by the state, Mr. Hunter went back to the version of his story favorable to the prosecution:
 "Q: I will rephrase that. Did you tell me that the reason you told Mr. Reese that Shug didn't do the stabbing was that you were afraid of Shug?
"A: Yes, sir.
"Q: Are you afraid of Shug?
"A: Yes, sir.
 "Q: You don't like having to sit in here and face him and say this, do you?
"A: No.
". . . .
"Q: You don't like that, do you?
"A: No, sir.
 "Q: And here today you're telling this jury that Shug [the appellant] did the stabbing, aren't you?
"A: Yes, sir."
After the defense had rested, the state offered into evidence a videotaped statement by Hunter. Over the appellant's objection, the video was admitted.
 A
The appellant attacks the admissibility of Hunter's videotaped statement in several ways. First, the appellant contends that the tape was introduced by the state as a prior consistent statement for the purpose of corroborating Hunter's testimony on cross-examination. Generally, the proponent of a witness may not bolster the credibility of a witness by showing that he made similar statements on prior occasions. Macum v.State, 39 Ala. App. 616, 107 So.2d 899 (Ala.Cr.App. 1958). Here, a unique argument is presented in that the appellant maintains that the state's introduction of the videotaped testimony constitutes an attempt by the opponent of a witness to bolster the witness's credibility. The videotaped evidence in this case was offered on rebuttal. Rebuttal evidence is "evidence which is offered by a party after the opponent has rested in order to contradict the opponent's evidence." Black's Law Dictionary, 1139 (5th ed. 1979). The state offered the evidence as a prior inconsistent statement. As such, it is admissible.
 B
Resourceful counsel for the appellant maintains, however, that even if the videotaped testimony was properly received as a prior inconsistent statement, the trial court erred when it failed to instruct the jury, on its own motion, that such evidence could be considered only as impeachment evidence. That is, that it could not be considered on the merits. The rule is that prior inconsistent statements of a witness may be used to impeach the credibility of the witness but, generally, may not be considered as substantive evidence. Randolph v. State,348 So.2d 858 (Ala.Cr.App. 1977); C. Gamble, McElroy's AlabamaEvidence, § 159.02 (1) (3d ed. 1977). No limiting instructions were given nor requested. *Page 1138 
Does the trial court have a duty, ex mero motu, to inform the jury that certain evidence may be considered by them only to impeach the witness's credibility? Some courts have held that the likelihood of a jury's considering a witness's prior inconsistent statement as substantive evidence of an accused's guilt is so great as to require the trial court itself to provide limiting instructions. People v. Taglia, 113 Ill. App.3d 260, 68 Ill.Dec. 879, 446 N.E.2d 1276 (1983). In Weaver v.State, 466 So.2d 1037 (Ala.Cr.App. 1985), we held that, where no limiting instructions have been requested, the trial court is not required to instruct the jury that a prior inconsistent statement of a witness may be considered only for impeachment purposes. Conforming to this direct precedent, we hold that the trial court's failure to give the jury limiting instructions in this case was not error.
 C
The appellant also contends that, when Hunter admitted in open court to making the inconsistent statements, he was already impeached and the state should not thereafter have been permitted to introduce the videotaped testimony as further impeachment material. Further, appellant argues that, under these circumstances, the taped statement was improperly introduced as substantive evidence. The fact that evidence has been received tending to impeach a witness does not preclude the introduction of other evidence with the same purpose. 98 C.J.S. Witnesses, § 530 (1971).
 II
The appellant next contends that the trial court erred to reversal in refusing to admit Hunter's affidavit into evidence when it was offered in surrebuttal. He argues first that the affidavit was properly admissible under the doctrine of curative admissibility to rebut the taped testimony introduced by the state. Since we have held that the videotaped statement was properly admitted, there was nothing improper to "cure," and the doctrine of curative admissibility does not apply. This is an appealing argument since the appellant sought to use a prior consistent statement to rehabilitate his witness, who had been impeached with a prior inconsistent statement. The states are fairly equally divided regarding whether such a procedure is permissible. See, McCormick on Evidence, § 49 (E. Cleary, 3d ed. 1984); Annot., 75 A.L.R.2d 909, 930-35 (1961); Annot., 140 A.L.R. 21, 49-78 (1942). Alabama follows the rule that disallows admission of a prior consistent statement in most circumstances. See, Long v. Whit, 197 Ala. 271, 72 So. 529
(1916), and cases collected therein. C. Gamble, McElroy'sAlabama Evidence, § 177.01 (2) (3d ed. 1977), states:
 "As a general rule, the impeachment of a witness by the introduction of evidence that he has made a statement which is inconsistent with his testimony does not authorize the proponent of the witness to support his credibility by evidence that the witness has made a statement on another occasion of the same tenor as his present testimony. This is true whether or not the witness is a party,[1] whether or not the witness admitted the making of the prior inconsistent statement,[2] whether the witness denied making such statement and testimony that he made it came from the mouth of another witness[3] and whether or not the prior similar statement was made before or after the time of the claimed inconsistent statement.[4]
[1] Long v. Whit, 197 Ala. 271, 72 So. 529 (1916).
[2] Childs v. State, 55 Ala. 25 (1876).
[3] McKelton v. State, 86 Ala. 594, 6 So. 301 (1888); Nichols v.Stewart, 20 Ala. 358 (1852).
[4] Nichols v. Stewart, 20 Ala. 358 (1852)."
The record makes it clear that this is not a situation in which the witness surprised counsel by his testimony. Evidently each party knew what Hunter would say when examined. By not calling him, the prosecution secured to itself the right to introduce a prior statement, while the rules denied the calling party the same opportunity. *Page 1139 
 III
The appellant also maintains that the prosecution improperly commented upon the appellant's bad character. The comments objected to by the appellant are as follows:
 "Q: People are pretty much afraid of [the appellant] in that neighborhood, aren't they?
"A: [By Hunter] Yes, sir.
"MR. REESE: Object to that.
"THE COURT: Sustained. Strike that."
Also, during closing argument, the following occurred:
"MR. MADDOX: He's feared in that neighborhood.
 "MR. REESE: I object to that. The testimony is that he's not feared.
"THE COURT: All right. Stick to the testimony."
Since the trial court sustained the appellant's objections to the first statement, and the second was corrected on the record by counsel, no adverse ruling was made.
The appellant maintains, however, that his objection to a similar comment by the prosecutor was overruled. The alleged improper comment is as follows:
 "Q: I will rephrase that. Did you tell me that the reason you told Mr. Reese that Shug didn't do the stabbing was that you were afraid of Shug?
"A: Yes, sir.
"Q: Are you afraid of Shug?
"A: Yes, sir.
 "Q: You don't like having to sit in here and face him and say this, do you?
"A: No.
"MR. REESE: I object to that, Your honor.
"THE COURT: Overruled."
"It is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice, or partiality concerning matters about which he is testifying." Maples v.State, 44 Ala. App. 491, 494, 214 So.2d 700, 703 (Ala.Cr.App. 1968). "In developing interest or bias on the part of a witness, the range of cross-examination rests largely in the discretion of the trial court and its rulings will not be disturbed unless it clearly appears that the accused was prejudiced by such rulings." Gilbert v. City of Montgomery,337 So.2d 140, 146 (Ala.Cr.App. 1976). The district attorney's questions had a direct bearing on Hunter's credibility by showing that he feared the appellant. The objection was properly overruled.
 IV
The appellant also contends that the trial court erred in ordering that he pay restitution. At the restitution hearing, the manager of the funeral home that buried the deceased testified that the total cost of services rendered by the funeral home amounted to $3,143.00. He further testified, without objection, that the bill was paid by the deceased's sister. The appellant maintains that this testimony was not sufficient to establish that the sister actually suffered pecuniary loss, since the sister may have been compensated for this expense by insurance or otherwise. The Restitution Act §15-18-65, et seq., Code of Alabama 1975, does not specifically address this issue, but the general law of damages applies to the present situation. "It is clear to us from this new enactment that it is the intent of the legislature that victims be fully compensated through restitution." Ex parte Clare,456 So.2d 357, 358 (Ala. 1984). Under the collateral source doctrine, damages recovered by a party are not diminished because the injured party has been compensated for the loss by insurance or other such payment. Mitchell v. Moore,406 So.2d 347 (Ala. 1981). The victim "is not required to prove that she actually paid the expenses claimed as damages but only that she was liable for payment of them." Roland v. Krazy Glue, Inc.,342 So.2d 383, 385 (Ala.Civ.App. 1977).
The appellant also contends that the funeral home manager should not have been permitted to testify at the restitution hearing because he was not one of the designated parties that has a right to be heard under § 15-18-67, Code of Alabama 1975. Section 15-18-67 provides: *Page 1140 
 "When a defendant is convicted of a criminal activity or conduct which has resulted in pecuniary damages or loss to a victim, the court shall hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant's criminal acts. Such restitution hearings shall be held as a matter of course and in addition to any other sentence which it may impose, the court shall order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages. The defendant, the victim or victims, or their representatives or the administrator of any victim's estate as well as the district attorney shall have the right to be present and be heard upon the issue of restitution at any such hearings." (Emphasis added.)
The purpose of the above provision is to insure that the enumerated persons having an interest in the outcome of the hearing shall have an unqualified right, if they wish, to be heard at that hearing. The act does not prohibit other parties from testifying at a restitution hearing. We conclude, therefore, that while the manager of the funeral home did not have a right to be heard at the hearing, there is nothing in the statute that would preclude him from testifying.
Last, the appellant argues that the evidence pertaining to payment of the funeral expenses was hearsay. No objection was made on this ground at trial, so we do not address it here.Godfrey v. State, 383 So.2d 575 (Ala.Cr.App.), cert. denied,383 So.2d 579 (Ala.), cert. denied, 449 U.S. 903,101 S.Ct. 276, 66 L.Ed.2d 134 (1980).
AFFIRMED.
All the Judges concur.