823 So.2d 57 (2001)
Ex parte ToForest Onesha JOHNSON.
(In re ToForest Onesha Johnson v. State of Alabama).
1002085.
Supreme Court of Alabama.
December 14, 2001.
J. William Cole of Luker, Cole & Associates, L.L.C., Birmingham, for petitioner.
Bill Pryor, atty. gen., and A. Vernon Barnett IV, asst. atty. gen., for respondent.
Prior report: Ala.Cr.App., 823 So.2d 1.
MOORE, Chief Justice.
WRIT DENIED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the denial of the petition for a writ of certiorari in this case. The trial court committed several reversible errors, and Johnson has demonstrated that the opinion of the Court of Criminal Appeals conflicts with binding authority governing these errors. In addition, the opinion of the Court of Criminal Appeals contains misstatements of law on other topics which will cause mischief in future cases, both criminal and civil, even though the misstatements do not constitute reversible error in this particular case.
The trial court erred to reversal in denying Johnson's challenges for cause directed to prospective juror F. and prospective juror S. On voir dire F. testified that, if he *58 found Johnson guilty of capital murder, "I'm more or less, nine chances out of ten it would be the death penalty." (R. 202 03.) Likewise, on voir dire examination, when defense counsel asked, in "a situation where you have already convicted somebody of capital murder ... I'm asking you whether you'd vote for the death penalty every time under those circumstances," S. testified, "Probably." (R. 251-52.)
"[T]he proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment [is] .... whether the juror's views would `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"
Wainwright v. Witt, 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (internal quotation marks omitted). This degree of prejudice in both of these prospective jurors obviously "would prevent or substantially impair the performance of [their] duties as ... juror[s] in accordance with [their] instructions and [their] oath." Id.
The trial court erred to reversal in denying Johnson's motion for a judgment of acquittal grounded on the failure of the State to prove that the murdered deputy was "on duty" as required by § 13A-5-40(a)(5), Ala.Code 1975, for a conviction of capital murder. The defendant offered this motion for a judgment of acquittal at the close of the case-in-chief by the State, when the record was devoid of evidence that the murdered deputy was "on duty." The deputy was moonlighting as a private security guard for a hotel when he was killed. Only if he had either personally witnessed a misdemeanor or had received a report of a felony would he have been transformed from off-duty to on-duty. Robinson v. State, 361 So.2d 1113, 1114 (Ala.1978). The record at that point in the trial contained no such evidence. Indeed, the very best case the opinion of the Court of Criminal Appeals can make for the deputy's being transformed from off-duty to on-duty reads:
"From the evidence, the jury could have concluded that Deputy Hardy witnessed, or at least suspected, either a drug transactionbased on Chambers's previous statementsor an imminent assault, based on Johnson's own admission that Monika Daniels was brandishing a pistol."
Johnson v. State, 823 So.2d 1, 43 (Ala. Crim.App.2001) (Part XII.A. of the opinion). The record lacks evidence that Deputy Hardy witnessed Monika Daniels "brandishing a pistol." Further, the Court of Criminal Appeals improperly relies on "Chambers's previous statements," which were not introduced during the case-in-chief of the State, but which were introduced only in the defendant's subsequently presented defense, too late to be considered in opposition to a motion for judgment of acquittal already offered at the close of the case-in-chief of the State. Ex parte Hunt, 744 So.2d 851, 859 (Ala.1999); Steele v. State, 512 So.2d 142, 144 (Ala. Crim.App.1987); Thomas v. State, 363 So.2d 1020, 1022 (Ala.Crim.App.1978). Moreover, "Chambers's previous statements" were her out-of-court declarations, which could be considered only for their value in impeaching her in-court testimony, not as substantive evidence to prove the circumstances of the killing. Varner v. State, 497 So.2d 1135, 1137 (Ala.Crim.App. 1986). See also Ex parte Minor, 780 So.2d 796, 801 (Ala.2000). Thus, because the State failed to prove during its case-in-chief that Deputy Hardy either witnessed a misdemeanor or received a report of a felony, the Court of Criminal Appeals was without basis to conclude, as it did, that "[t]he moment he witnessed criminal activity, Deputy Hardy's status changed from *59 that of a security guard to that of a deputy sheriff and he was then considered to be `on duty.'" Johnson, 823 So.2d at 43.
Part IV of the opinion of the Court of Criminal Appeals contains two erroneous holdings designed to preclude Johnson's Batson[1] objections to the peremptory challenges exercised by the State. These holdings are damaging to our jurisprudence, even though the merits of the defendant's Batson objections are not established by the record.
The first of these erroneous preclusive holdings, implicit in the opinion, is that the absence of documentary evidence of the race of the prospective jurors peremptorily challenged by the State precludes review of Johnson's Batson objections. The Court of Criminal Appeals holds that defense counsel's assertions, uncontradicted in the trial court, identifying the race of the peremptorily challenged prospective jurors are insufficient to support appellate review. These holdings are without precedent and without good reason.
The law contains no requirement that the race of venirepersons be contained in any document available to defense counsel at trial. As judges and lawyers who try cases know, jury lists do not state the race of any venireperson. These holdings by the Court of Criminal Appeals imply that, to preserve a Batson objection, a defense lawyer must require each prospective juror to state his or her race either in a jury questionnaire or in his or her voir dire testimony. Such a requirement would not only affect the trial, at the very outset, with a preoccupation upon race, but also would embarrass and confuse the prospective jurors and consume more time than the court system can afford. How, for instance, should a juror who is one-fourth black and three-fourths white identify his or her race? Would the juror be required to state his or her skin tone for the record? Would the juror be required to explain for the record whether or not he or she is considered black, or another minority race, by others? The sensitive function of identifying the race of prospective jurors is commonly performed informally by the observations of trial counsel and the judge. The unrefuted observations of defense counsel in this case, appearing of record, are entirely adequate.
Similarly in Part IV of the opinion, the Court of Criminal Appeals holds, in effect, that a defendant cannot maintain that the State lacked a race-neutral ground for a peremptory challenge unless, on record, the defendant has identified all of the prospective jurors who have raised their hands in affirmative answers to the various questions asked of them in voir dire. The pertinent portion of the opinion reads:
"[T]he transcript of voir dire fails to reveal the jurors who answered affirmatively the prosecutor's question regarding prior arrests; rather than including the names of those people who indicated that they had been arrested, the transcript merely states: `Show of hands.' (R. 57.) Neither defense counsel nor the prosecutor attempted to have the names of those jurors who answered affirmatively included in the record. While we cannot presume that valid race-neutral reasons for peremptory strikes are present outside the record, we likewise cannot presume that there are no valid race-neutral reasons when the record is incomplete on the issue. Because there is simply nothing in the record before us suggesting that the State used its strikes in a discriminatory manner, we cannot say that the trial *60 court's ruling on Johnson's Batson motion was clearly erroneous."
Johnson, 823 So.2d at 20-21. While the Court of Criminal Appeals recites, as already quoted, that "we cannot presume that valid race-neutral reasons for peremptory strikes are present outside the record," the Court of Criminal Appeals proceeds to indulge that very presumption to counter the defendant's argument that the State lacked any race-neutral reason for its peremptory challenges.
The duty is on the State to establish its race-neutral reasons. The State is commonly allowed to establish them on the basis of matters that are entirely outside the record, such as recollections of the prosecutor about some prior criminal activity or prosecution of a prospective juror. Unless the State does somehow establish a race-neutral reason, however, the trial court cannot, in evaluating a defendant's Batson objection, simply ignore the argument that no race-neutral reason for a peremptory challenge is apparent.
Only rarely are all of the prospective jurors who raise their hands in response to a question identified of record. No trial court could afford the time that a comprehensive identification of all shows of hands would consume. The appellate courts should not impose any such absurd burden on either defendants or trial judges. Moreover, if the appellate courts are to speculate that an unidentified show of hands may have provided the State with a race-neutral reason for a peremptory challenge, the appellate courts may just as well speculate that some other matter not of record supplied a race-neutral reason.
NOTES
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).